511 So.2d 1354 (1987)
Henry Ray BUCKLEY
v.
STATE of Mississippi.
No. 57067.
Supreme Court of Mississippi.
July 29, 1987.
Robert M. Ryan, Taylor, Jones, Alexander, Greenlee, Seale & Ryan, Senatobia, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
*1355 ROBERTSON, Justice, for the Court:

I.
Today's appeal finds one convicted as accessory after the fact of burglary presenting a challenge to the sufficiency of the prosecution's proof and an evidentiary question. Beyond that, the Appellant disputes that his prior criminal convictions truly arose out of separate incidents, in consequence of which Appellant denies that he is an habitual offender. For the reasons set forth below, we deny all assignments of error and affirm.

II.
This case arises from the December 13, 1982, burglary of the business premises of E.L. Garner, Inc., of Batesville, Mississippi, and the theft of an air compressor and four tires. David Garner, one of the principals in the Garner corporation, told police that he had been sitting in a utility trailer when he noticed some workers pull up in a truck and park close to the trailer. About two and a half hours later, Garner was notified that the air compressor and four tires were missing. Garner told the police the names of the three employees he had seen drive up to the trailer; Garner also had his foreman fire the men. One of the three was Henry Ray Buckley, Defendant below and Appellant here.
The air compressor turned up in a pawn shop in Southaven, Mississippi. The pawn shop receipt listed the seller as Ricky Lofton. Lofton was not one of the three employees implicated in the theft, but his statement made February 9, 1983, pointed the finger at just those three.
On the day of December 13, 1982, David Casey, Ira Perry, and Henry Ray Buckley were in a truck driven by their foreman, Alfred Bratcher. Bratcher drove up to the trailer and went in to take care of some business. Casey and Perry also got out of the truck and proceeded to take from behind the trailer the air compressor and four tires which they threw over a fence thus concealing them from view. The extent of Buckley's involvement is a matter of some disagreement. Perry testified that Buckley and Casey "had the compressor half way over the fence," while Casey stated that Buckley did not have anything to do with the removal of the items over the fence, and Buckley himself maintained that he never left the truck.
At any rate, the air compressor and tires came to rest at several places after their removal from behind the fence was effected by Casey and a Bernard Turner who drove the stolen items to Casey's house. According to Casey, he met Perry and Buckley in front of his house around 7:30 the night of the theft, and the compressor and tires were taken by Perry to Perry's sister's house. From there they were moved to Perry's uncle's house.
Casey testified that the day after the theft, he, Perry and Buckley were fired. Several days later, Casey stated, he, Lofton, Perry and Buckley met to discuss what to do with the items and Buckley suggested pawning them in Memphis. Using Lofton's car, they picked up the air compressor and took it to a pawn shop on Highway 51 in DeSoto County. When they were offered only $75.00 for the compressor, they tried another pawn shop where they were given $150.00. Lofton took the money as he was the only one with a driver's license. Casey testified that he specifically remembered Buckley entering the second pawn shop, because a gun Buckley had in his pocket fell out, eliciting an admonishment from the pawn shop owner. The sale completed, Casey testified, the four men stopped at a liquor store to purchase some spirits and change the $150.00. The sum was divided amongst them with all but Lofton getting $40.00. For the use of his car, Lofton was given $30.00. About a week later, Casey stated, he, Buckley and Perry drove to Clarksdale where they sold three tires for $30.00 to the Speedy Service Station. They each made $10.00 on the deal.
Perry's testimony was essentially the same as Casey's except that Perry testified that Buckley was involved in throwing the items over the fence. Perry also remembered the incident at the second pawn shop *1356 when Buckley's pistol fell "out of his boot or whatever he had on."
Lofton testified that he first saw the compressor and tires when they were at Perry's uncle's house. Lofton recalled Buckley's gun clattering to the floor of the pawn shop, "The man at the shop got real irritated and told us don't never come in there with a loaded pistol no more."
Buckley's testimony, essentially that he gave in a statement to the police February 11, 1983, differed from that of Casey, Lofton and Perry in several respects. According to Buckley, he merely watched while the air compressor and four tires were thrown over the fence. This accords with Casey's testimony but conflicts with Perry's. When Perry and Casey got back in the truck, Buckley testified, he argued with them about what they had done. They told him that they needed money to pay lawyers for some rape charges they were facing. Buckley said that he did not meet with Perry and Casey later that same night, but he did "run into them." About a week to ten days later Lofton and Casey drove by and asked Buckley to go for a ride with them. Buckley testified that he did not know where they were going. They picked up Perry and drove toward Memphis. Buckley stated that it wasn't until they stopped at the first pawn shop that he knew they had the compressor in the car. He waited in the car while the others went into the pawn shop. At the second pawn shop, Buckley testified, he went into a karate studio. He did not have a gun on him. They stopped at a liquor store and cashed the money. Buckley admitted that he received $25.00. He did not accompany Casey and Perry to Clarksdale to sell the tires.
On April 8, 1985, a jury empaneled in the Circuit Court of Panola County found Henry Ray Buckley guilty as an accessory after the fact to the crime of burglary of a non-dwelling. Miss. Code Ann. §§ 97-1-5 and 97-17-33 (1972). Thereafter, in a separate non-jury hearing, the Circuit Court found that Buckley had been previously convicted of two separate felonies in Memphis, Tennessee. Accordingly, the Court sentenced Buckley as an habitual offender to five years imprisonment without parole. Miss. Code Ann. § 99-19-81 (Supp. 1985).

III.
Buckley's first assignment of error complains of the Circuit Court's denial of his motion for a mistrial made after a prosecution witness made unsolicited reference to Buckley's "rap sheet".
The "rap sheet" reference was made by Batesville Police Captain Aubrey B. Howe during the course of his redirect examination by the prosecuting attorney. Captain Howe was called to testify regarding the details of recovery of the stolen items, as well as the circumstances surrounding Buckley's statement given to the police on February 11, 1983. The following colloquy occurred:
Q. (District Attorney) Now, would you agree with me, Cap. Howe, that once you got the dead wood on somebody, they are much more likely to come in and make a statement than they are prior to that?
A. (Howe) That's true, sir.
Q. And at the time this man made the statement, the Batesville Police Department had already received a statement from another individual who had told the police department about this man's participation in selling this stolen property. Is that correct?
A. That's right, sir, and also his rap sheet was checked before this came up.
Q. Now, Mr. Smith was asking you some legal questions that the jury will be instructed ...
Public Defender (Mr. Smith):
Your Honor, may we approach the bench?
Outside the presence of the jury, defense counsel moved for mistrial "on the grounds that a witness blurted out before the jury that he had checked Buckley's rap sheet and that he had snapped his fingers as if some great revelation had taken place after he checked." The Circuit Court overruled the motion noting that "The remark made by the witness ... was admittedly unresponsive to the question propounded by the State." "I frankly question what effect, if *1357 any, that remark had on the jury. I know what [defense counsel] is saying as far as the snap of the fingers, but I'm not convinced that the phrase `rap sheet' means much to the ordinary lay person but it was not pursued by the State and was not gone into further." In overruling the motion, the judge offered to admonish the jury but did not do so, respecting the request of the defense counsel. Later in the proceedings Buckley admitted to at least one former conviction in testimony elicited from his own counsel.
Buckley argues on this appeal that Capt. Howe's reference to this "rap sheet" was improper evidence of other crimes and "was highly prejudicial since it obviously reflected on prior criminal conduct of the [defendant] separate and distinct from that he was then being tried for." Buckley cites Griffin v. State, 482 So.2d 233 (Miss. 1986) in which a conviction of burglary was reversed because the State had introduced evidence of another burglary occurring on the same day some 400 feet away and the defendant's fingerprints were found at the scene of the other robbery. Buckley also cites Sumrall v. State, 272 So.2d 917 (Miss. 1973); Eubanks v. State, 419 So.2d 1330 (Miss. 1982); and Gray v. State, 351 So.2d 1342 (Miss. 1977) for the same proposition.
In the present state of the record, the Circuit Court did nothing which may be said to have been error. Ordinarily, where statements such as that with which we are here concerned are inadvertently made by a witness, defense counsel is obliged to object and, upon request, the court should instruct the jury to give the statement no consideration in deliberating upon its verdict. Here, defense counsel displayed a sensitive regard for the probability that an objection and admonition would simply have had the effect of reemphasizing to the jury that Buckley had a rap sheet. Defense counsel unequivocally declined the Circuit Court's offer to admonish the jury to disregard the testimony. In this circumstance, we have held that there is no error requiring reversal. Stewart v. State, 466 So.2d 906, 910 (Miss. 1985); Gardner v. State, 455 So.2d 796 (Miss. 1984); Reddix v. State, 381 So.2d 999, 1007 (Miss. 1980); Clanton v. State, 279 So.2d 599, 602 (Miss. 1973).
Here there is an additional factor. Buckley himself took the witness stand and, on cross-examination, admitted at least one prior conviction. Indeed, Buckley admitted much more than the mere fact that he had a rap sheet. Nothing suggests that Buckley did this in order to try to explain away the rap sheet reference by Captain Howe. Rather, Buckley was taking the stand in his own behalf to try to establish his innocence and, of course, was subject to impeachment on cross-examination. In such circumstances, there is no cognizable prejudice requiring reversal. See Gray v. State, 472 So.2d 409, 418-19 (Miss. 1985). See also Holliness v. State, 467 N.E.2d 4, 6 (Ind. 1984).
The assignment of error is denied.

IV.
At the close of the prosecution's case-in-chief, Buckley moved to dismiss on grounds that the State had failed to establish a prima facie case of accessory after the fact of larceny. The motion was renewed at the close of all of the evidence and, after sentencing, Buckley moved for a judgment of acquittal notwithstanding the verdict.
The matter is before us now on Buckley's challenge to the legal sufficiency of the evidence to support a guilty verdict. Specifically, Buckley assigns as error the Circuit Court's overruling of his motion for judgment of acquittal notwithstanding the verdict. See Wetz v. State, 503 So.2d 803, 807-08 n. 3 (Miss. 1987).
Our familiar rule, in evaluating a j.n.o.v. motion, is that the Circuit Court  and this Court on appeal, as well  must consider all the evidence, not just the evidence which supports the prosecution's case, in the light most favorable to the prosecution. Peoples v. State, 501 So.2d 424, 427 (Miss. 1987); Bunkley v. State, 495 So.2d 1, 3 (Miss. 1986). Evidence which supports the case of the prosecution is taken as true. Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); *1358 Christian v. State, 456 So.2d 729, 734 (Miss. 1984); Warn v. State, 349 So.2d 1055, 1056 (Miss. 1977). All favorable inferences that may reasonably be drawn from the evidence are given to the prosecution. Bunkley v. State, 495 So.2d 1, 3 (Miss. 1986); Griffin v. State, 480 So.2d 1124, 1126 (Miss. 1985); Christian v. State, 456 So.2d 729, 734 (Miss. 1984). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss. 1987); Peoples v. State, 501 So.2d 424, 428 (Miss. 1987).
These principles of appellate review must be applied to each element of the offense charged. The prosecution proceeded under the authority of Miss. Code Ann. § 97-1-5 (1972), which reads as follows:
Every person who shall be convicted of having concealed, received, or relieved any felon, knowing that such person had committed a felony, with intent to enable such felon to escape or avoid arrest, trial, conviction or punishment, after the commission of such felony, on conviction thereof shall be imprisoned... .
The felony after the fact of which Buckley has been found an accessory is burglary of a building not a dwelling. Miss. Code Ann. § 97-17-33 (1972).
Applying the accessory statute, Harris v. State, 290 So.2d 924 (Miss. 1974) sets out the elements of the crime, accessory after the fact:
(1) a completed felony has been committed;
(2) the accused concealed, received, relieved, aided or assisted a felony, knowing that such person had committed a felony;
(3) such aid or assistance was rendered with intent to enable such felon to escape or avoid arrest, trial, conviction or punishment after the commission of such felony.
The help furnished to the principal must be given after the felony is completed. Harrel v. State, 39 Miss. 702, 80 Am.Dec. 95 (1861). Guilty knowledge is an indispensible element of the crime. Matula v. State, 220 So.2d 833 (Miss. 1969). While one cannot be both a principal and an accessory after the fact, Crosby v. State, 179 Miss. 149, 175 So. 180 (1937), one need not be absent during the felony, Smith v. United States, 306 F.2d 286 (C.A.D.C. 1962), although there is authority to the contrary. See State v. Loveless, 140 W. Va. 875, 87 S.E.2d 273 (1955). See also Wharton, Criminal Law § 33 (1978).
Buckley does not dispute that Perry and Casey committed a burglary of the Garner premises. Having in mind the principles of appellate review recited above, we find in the record evidence of the second and third prongs of Harris, that Buckley did indeed aid and assist Perry and Casey with intent to enable them to avoid prosecution, to-wit:
(a) Buckley was aware that the air compressor was stolen and was present when it was placed in the car headed for Memphis;
(b) It was Buckley's idea to sell the air compressor in Memphis;
(c) Buckley was present on the ride to Memphis;
(d) Buckley was present during the sale at the pawn shop in Memphis;
(e) Buckley received part of the proceeds;
(f) Buckley was involved in selling the tires.
This evidence reflects that Buckley assisted in the disposition of the items of personal property taken in the course of the burglary. Assisting in converting a burglar's loot into cash aids the felon in the sense that evidence of the crime is rendered less accessible to law enforcement authorities. Buckley thus aided Perry and Casey in their efforts to avoid prosecution for burglary.
In this view of the matter, the Circuit Court correctly denied Buckley request for a peremptory instruction as well as his subsequent motion for judgment of acquittal notwithstanding the verdict. Wetz v. State, 503 So.2d 803, 808-09 (Miss. 1987); Peoples v. State, 501 So.2d 424, 428-29 *1359 (Miss. 1987); Cook v. State, 467 So.2d 203, 209 (Miss. 1985); Jones v. State, 442 So.2d 919, 921 (Miss. 1983).

V.
Buckley argues finally that the Circuit Court erred in sentencing him as a habitual offender. Miss. Code Ann. § 99-19-81 (Supp. 1985). The essence of his point is that two prior convictions in Memphis, Tennessee, arose out of the same incident. Section 99-19-81 requires that, for enhancement of punishment, the two prior felonies must have arisen "out of separate incidents at different times."
We have examined the indictment and find the charge that Buckley has two prior convictions, to-wit: a simple robbery conviction from the Shelby County, Tennessee, criminal court (Cause No. 13958) for which Buckley was sentenced to not more than five years, and a federal court conviction for possession of two stolen credit cards which also carried a sentence of not more than five years. At trial, however, the prosecution introduced exhibits establishing three previous convictions, those in the indictment and another arising out of the Shelby County Criminal Court for burglary, labeled Cause No. 15040, with a three year sentence to run concurrently with the robbery sentence. The federal conviction was evidenced by a certified copy of the judgment and commitment identified as Cause No. CR6-67-151. The other two were shown by copies of the indictments in minute entries. Also, copies of an order authorizing waiver of trial and accepting a guilty plea were introduced for Cause No. 13958. The documents concerned the federal charge in the State Cause No. 13958 were entered without objection. Buckley's counsel did object to evidence concerning Cause No. 15040 as it was not listed in the indictment. The prosecution conceded that Cause No. 15040 could not be relied upon for the purpose of the habitual offender conviction but entered the documents anyway as they contained some information pertinent to Cause No. 13958.
When questioned concerned the two offenses listed in the indictment, Buckley testified that the credit card charge and the robbery arose out of the same incident. He stated he had been stopped for a traffic violation and an ensuing search revealed the stolen cards under the seat in the passenger side. He testified that he had been dating a prostitute who had left the cards in his car after stealing the wallet of one of her clients.
Having heard the evidence, the Circuit Court enhanced Buckley's punishment under Section 99-19-81, but held that it was doing so only by reason of the two convictions listed in the indictment. The Circuit Court expressly found that the robbery conviction, consisting of an assault and forceful taking of a wallet from the victim, arose from an incident which occurred on September 9, 1967. The Court found the federal conviction of unlawful possession of stolen credit cards to have arisen from an incident which occurred on August 26, 1967. "I would have to stretch my imagination from here to New Orleans to believe that these were the same incidents, arising out of the same transactions," the Circuit Court explained.
In order for 99-19-81 enhanced punishment to apply, the two prior charges must have arisen from separate incidents, Riddle v. State, 413 So.2d 737 (Miss. 1982), even though the convictions of the two prior offenses may have occurred on the same day. Rushing v. State, 461 So.2d 710 (Miss. 1984). A prior offense may be considered under the statute even if occurred on the same day as the instant offense as long as the two charges arose from "separate incidents." Crawley v. State, 423 So.2d 128 (Miss. 1982). In the case of Riddle, supra, separate charges arising out of a kidnapping and rape of an eight-year-old, along with a burglary of the dwelling in which the child was sleeping were not separate incidents. Defense counsel asserts that the State must overcome Buckley's testimony that the two charges, No. 13958 and No. 15040, were from the same incident, namely the finding of stolen credit cards in his car. The State put into evidence certified documents detailing the convictions *1360 from which the judge adduced the incidents to be separate.
In Seely v. State, 451 So.2d 213, 215 (Miss. 1984), this Court stated: "The State has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge." That burden, of course, is proof beyond a reasonable doubt.
Our scope of review of the Circuit Court's determination on a non-jury issue such as this is likewise the same as in the case of any other non-jury issues. See Gavin v. State, 473 So.2d 952, 954-55 (Miss. 1985); Neal v. State, 451 So.2d 743, 753 (Miss. 1984). Having in mind that scope of review, we find that there is substantial credible evidence in the record that
(a) on March 8, 1968, Buckley was convicted in the U.S. District Court for the Western District of Tennessee for unlawful interstate mailing of stolen credit cards, a conviction arising out of an incident occurring on August 26, 1967, and upon which Buckley was sentenced to five years imprisonment; and
(b) on March 6, 1968, Buckley was convicted in the Shelby County Criminal Court, Division 3, of robbery, a conviction arising out of an incident occurring on September 9, 1967, and upon which he was sentenced to five years imprisonment.
The assignment of error is denied.
CONVICTION OF ACCESSORY AFTER THE FACT OF LARCENY AFFIRMED AND SENTENCE OF FIVE (5) YEARS IMPRISONMENT WITHOUT PROBATION OR PAROLE AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.