906 So.2d 113 (2004)
Steven FARRIS and Thomas Frederick, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01116-COA.
Court of Appeals of Mississippi.
December 7, 2004.
*115 Edmund J. Phillips, Jr., Newton, attorney for appellants.
Office of the Attorney General by Deidre McCrory, attorney for appellee.
Before KING, C.J., CHANDLER, and ISHEE, JJ.
*116 ISHEE, J., for the Court.
¶ 1. Steven Farris and Thomas Frederick were charged with conspiracy and convicted in the Circuit Court of Leake County for having conspired to secrete into a correctional facility an instrument useful to facilitating an escape. We find that the trial court committed no reversible errors, and the judgment of the trial court is affirmed.

STATEMENT OF FACTS
¶ 2. On July 26, 2001, during the normal process of spot checking inmate mail, employees of the Walnut Grove Youth Correctional Facility discovered instructions on how to assemble a bomb in a letter addressed to inmate Steven Farris. This discovery led prison authorities to step up their monitoring of Farris's correspondence and telephone calls. During the course of this investigation, prison authorities gathered information which led them to believe that Farris and another inmate, Thomas Frederick, were planning an escape attempt. The inmates' letters and telephone calls cumulatively referenced monies being collected and forwarded to individuals outside the prison in exchange for blades being sent; the purchase of a used car, wigs, false moustaches, hair dye, and clothing; and a warning to get rid of the letters which the inmates had sent. Further monitoring revealed a letter between Farris and his mother, Chrly Beaty, which stated that Farris knew "the schedule, shifts, and the people's habits" and that they "have maybe two more shots at this." Based on their surveillance, prison authorities became suspicious of references to "blades" and "fixing books." Consequently, prison authorities began looking for a hacksaw blade to be delivered to the facility. After an October visit by Beaty to her son Farris, prison authorities searched her vehicle and discovered in the trunk hacksaw blades embedded in the spine of a book, titled Red Storm Rising.
¶ 3. Farris, Beaty, Frederick, and Frederick's mother, Terry Hughes, were subsequently indicted for conspiracy and conveying articles useful for escape to felons pursuant to Miss.Code Ann. §§ 97-1-1 (Rev.2000) and 97-9-27 (Rev.2000). Hughes died prior to trial. Farris, Beaty and Frederick were convicted by a jury on both counts.
¶ 4. Aggrieved, Farris and Frederick appeal asserting that: (1) the trial court erred in a number of evidentiary rulings; (2) the trial court erred in allowing the State to exceed the scope of cross-examination during the redirect examination of Warden Fitch; (3) the trial court erred in allowing the jurors to take certain transcripts of telephone conversations into the jury room when they retired to deliberate; (4) the trial court erred in denying a motion to quash the indictment or the venire; and (5) the verdict was against the overwhelming weight of the evidence. Frederick alone asserts an additional assignment of error in that the trial court incorrectly commented to the jury regarding the presumption of innocence.

ISSUES AND ANALYSIS

I. Whether the trial court erred in a number of evidentiary rulings.
¶ 5. Farris and Frederick assert that the trial court made a number of evidentiary rulings in error during the course of the trial, and each of their assertions will be discussed in turn.

1. Letter No. 2 from Jay Long to Farris

¶ 6. Farris and Frederick maintain that pursuant to M.R.E. 402 the trial court erred in admitting Exhibit S-4, the letter from Jay Long to Farris postmarked July *117 24, 2001. M.R.E. 402 states that "[e]vidence which is not relevant is not admissible." Farris and Frederick argue that because the letter made no reference, either express or implied, to the crimes charged it should have been excluded as irrelevant evidence.
¶ 7. In order to determine whether evidence is irrelevant, one must understand what relevant evidence is. M.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court has broad discretion in determining the relevance of evidence, and the standard of review for the trial court's evidentiary ruling is abuse of discretion. Baldwin v. State, 784 So.2d 148, 160(¶ 46) (Miss.2001).
¶ 8. The State contends that the trial court properly admitted the letter even though it did not reference any of the crimes alleged in the indictment. The State maintains that the letter was relevant and admissible because it referred to Farris by his nickname, "Desperado", which showed that Farris was known by this nickname both inside and outside of the correctional facility. The nickname was significant because it appeared in other material communications.
¶ 9. When defense counsel challenged the admissibility of the letter, the trial court conducted a hearing outside the presence of the jury. The trial court determined that the letter was relevant and admissible based on the following specific findings: the letter referenced Farris's nickname; the letter was from Long just like the initial letter with the bomb-making instructions had been; and there was a short time frame between the two letters.
¶ 10. The critical fact at issue during the prosecution was whether Farris was engaged in a conspiracy. The letter was evidence having a tendency to make the existence of that fact at issue more probable or less probable than it would have been without the evidence. The trial court made specific findings justifying the letter's admissibility which were consistent with the rules of evidence and the trial court's discretion. Therefore, this Court finds that the trial court's decision to admit the letter into evidence was proper.

2. Testimony regarding letter No. 1 from Jay Long to Farris

¶ 11. During the trial court proceedings, Warden Blevins was questioned by the prosecution regarding a letter Farris had received from Jay Long prior to the July 24th letter. Warden Blevins testified over defense objection that the letter contained information regarding how to assemble a bomb, and that the letter caused prison authorities to be concerned and to focus increased surveillance on Farris. Farris and Frederick argue that Warden Blevins's testimony regarding the letter was inadmissible because it was hearsay and not the best evidence.
¶ 12. M.R.E. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Official Comment to M.R.E. 801 further provides that "if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay."
¶ 13. The State maintains that Warden Blevins's testimony was not offered to prove the truth of the matter asserted, but rather to show information acted on by the prison authorities, and to explain the basis for beginning the investigation. The State argues, therefore, that the testimony was *118 not hearsay and was properly allowed into evidence. See Jackson v. State, 527 So.2d 654, 656-57 (Miss.1988); Kolberg v. State, 829 So.2d 29, 76-77 (¶ 133) (Miss.2002). The record reflects that the significance of the letter was simply that a statement was made about a criminal act and there was no issue regarding the truth of that asserted matter in the trial court. Therefore, the admission of Warden Blevins's testimony was consistent with the rules of evidence and our case law. The trial court did not abuse its discretion in admitting Warden Blevins's testimony as it was not offered to prove the truth of the matter asserted and was, therefore, non-hearsay.
¶ 14. As previously mentioned, Farris and Frederick also objected to Warden Blevins's testimony on the grounds that it was not the best evidence pursuant to M.R.E. 1002. This assertion, however, is also without merit. M.R.E. 1002, the so-called Best Evidence Rule, states that "the original writing is required to prove the content of a writing except as otherwise provided by law." (emphasis added). The record reflects that the testimony regarding this letter from Long to Farris was not elicited to prove the contents of the letter. The letter was not offered for the truth of whether Farris intended to create or use a bomb. Testimony regarding the letter was offered for the purpose of establishing the prison officials' awareness of Farris's intent to commit a criminal act. Having previously concluded that Warden Blevins's testimony regarding the letter was non-hearsay because it was not elicited to prove the content of the letter, we find that the Best Evidence Rule is not implicated because the contents of the letter were not at issue in the trial court. See Dixie Ins. Co. v. Mooneyhan, 684 So.2d 574, 581 (Miss.1996) (M.R.E. 1002, the Best Evidence Rule, is implicated only when attempting to prove the contents of a writing).

3. Testimony regarding a telephone conversation between Farris and Hughes

¶ 15. Farris and Frederick argue that the trial court erred in allowing testimony from Warden Fitch regarding a telephone conversation between Farris and Hughes. During direct examination, Warden Fitch was asked by the State "about who Mrs. Hughes was referring to when she mentioned another inmate's mother." Warden Fitch answered, "I believe it's . . . Farris." The trial court overruled the defense objection that the testimony was speculation. The trial judge stated that the testimony was admissible because "[Warden Fitch] has said what he believes."
¶ 16. Farris and Frederick maintain that nothing was said in the telephone conversation to identify the woman to whom Farris was speaking at the time. Farris and Frederick cite a number of cases in support of their proposition that Warden Fitch's testimony regarding the telephone conversation between Farris and Hughes was inadmissible opinion testimony. See Schumpert v. Watson, 241 Miss. 199, 129 So.2d 627 (1961); Watts v. U.S., 24 F.Supp. 969 (S.D.Miss.1938); Greer v. Pierce, 167 Miss. 65, 147 So. 303 (1933); Wells v. Shipp, 1 Miss. 353 (1829). These cases, however, were all decided prior to the judiciary's adoption of the Mississippi Rules of Evidence in 1986 and are inconsistent with the current state of the law in this area. The Schumpert holding regarding opinion testimony was overruled by Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss.1985) (overruling recognized by Miller by Miller v. Stiglet, Inc., 523 So.2d 55 (Miss.1988)), and the Watts, Wells, and Greer holdings regarding opinion *119 testimony have all been superceded by the Mississippi Rules of Evidence.
¶ 17. Today, all evidentiary questions must be addressed in relation to the Mississippi Rules of Evidence. The record reflects that Warden Fitch was neither tendered as, nor did he offer testimony as an expert witness. Accordingly, M.R.E. 701, Opinion Testimony by Lay Witnesses, governs Warden Fitch's testimony. M.R.E. 701 states that:
[i]f a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
¶ 18. Furthermore, the Official Comment to M.R.E. 701 provides that the rules of evidence favor lay witness opinion testimony when the following two considerations are met: the witness must have first-hand knowledge or observation, and the witness's opinion must be helpful in resolving the issues. The record reflects that Warden Fitch had first-hand knowledge of the telephone conversation as it was electronically recorded at the prison and then transcribed into a transcript which he had read prior to trial. The telephone recording equipment at the prison automatically registered the telephone numbers on both the originating and receiving ends of the call. Warden Fitch testified that the receiving telephone number matched the number for Hughes that Farris had provided to authorities when he became incarcerated. Furthermore, it is clear that the identity of the parties to the telephone call was a fact at issue for the conspiracy prosecution, and that Warden Fitch's testimony would have been helpful to the jury in resolving that issue. Finally, it needs to be remembered that Warden Fitch was subjected to cross-examination by three individual defense counsels, and that each had a thorough opportunity to challenge Warden Fitch's opinion testimony and credibility. With each of these considerations in mind, it is clear that the trial court's ruling on the admissibility of the lay witness opinion testimony was consistent with the rules of evidence and our case law. See Bryant v. State, 748 So.2d 780, 793(¶ 63) (Miss.Ct.App.1999) (trial court ruling affirmed on admissibility of lay witness opinion testimony conveyed in terms of "he thought").

II. Whether the trial court erred in allowing the State to exceed the scope of cross-examination during the redirect examination of Warden Fitch.
¶ 19. Farris and Frederick assert that the trial court erred in allowing the State to exceed the scope of cross-examination during their redirect examination of Warden Fitch. Defense counsel maintain that they made no reference to any letters during their cross-examination of Warden Fitch, but that regardless, the trial court allowed the State to admit Exhibit S-3 into evidence during its redirect examination of Warden Fitch. Farris and Frederick maintain that Beech v. Leaf River Forest Prods., Inc., 691 So.2d 446 (Miss.1997) is controlling.
¶ 20. The Beech Court held that it was proper that a witness not be permitted to testify to an exhibit during the redirect examination because the exhibit had not been previously introduced during the direct examination or the cross-examination and, therefore, was not proper subject matter for the redirect examination. Beech, 691 So.2d at 452. However, the Beech Court also held that unless the trial *120 judge's discretion in evidentiary rulings is so abused as to be prejudicial to a party, this Court will not reverse his ruling. Beech, 691 So.2d at 448. Additionally, the Supreme Court has held that a trial court's ruling on matters pertaining to redirect examination will not be disturbed unless there has been a clear abuse of discretion. Lloyd v. State, 755 So.2d 12, 14(¶ 9) (Miss.Ct.App.1999) (citing Blue v. State, 674 So.2d 1184, 1212 (Miss.1996) (overruled on other grounds)).
¶ 21. The record reflects that after the trial court overruled the defense objection, the court allowed each defense counsel another opportunity to cross-examine Warden Fitch regarding the letter. Defense counsel had every opportunity to challenge the credibility and weight of the testimonial and documentary evidence. The documentary and testimonial evidence was subjected to vigorous recross-examination. Furthermore, Farris and Frederick have failed to demonstrate how they were prejudiced by the trial court's ruling. Bearing in mind that defense counsel had every opportunity to cross-examine Warden Fitch after the letter was admitted into evidence, and that Farris and Frederick cannot articulate how they were prejudiced by the trial court's evidentiary ruling, we find that the trial court did not clearly abuse its discretion.

III. Whether the trial court erred in allowing the jurors to take certain transcripts of telephone conversations into the jury room when they retired to deliberate.
¶ 22. Farris and Frederick assert that the verdict should be overturned because the trial court allowed several transcripts of telephone conversations between the defendants to be taken into the jury room during the deliberations. Farris and Frederick objected at trial to the admissibility of the transcripts in addition to the actual recordings of the telephone conversations. During the trial court's evidentiary hearing on this matter, the State cited several cases which indicated that the transcripts were admissible because the transcripts would be helpful to the jury. See Dye v. State, 498 So.2d 343, 344 (Miss.1986); Coleman v. State, 697 So.2d 777, 785 (Miss.1997). Farris and Frederick maintain that although Coleman allows for transcripts to be used by the jury as a guide, they point out that the Coleman Court ruled that the transcripts must be retrieved from the jury prior to deliberations. Coleman, 697 So.2d at 785.
¶ 23. The State maintains that the trial court's conduct was appropriate according to Uniform Circuit and County Court Rules, Rule 3.10, which states that "[t]he court shall permit the jury, upon retiring for deliberations, to take to the jury room the instructions and exhibits and writings which have been received in evidence, except depositions." A careful reading of Dye and Coleman illustrates the distinction relevant to this issue.
¶ 24. In Dye, the supreme court acknowledged the trial court's broad discretion regarding the admissibility of evidence and affirmed the trial court's decision to admit into evidence both the recording itself and the transcript of the recording. Dye, 498 So.2d at 344. Farris and Frederick are correct that Coleman required that the transcripts be retrieved from the jury prior to deliberations, however, the transcripts in Coleman had not been introduced into evidence and were, therefore, not exhibits. Coleman, 697 So.2d at 785. The fundamental distinction between the Dye and Coleman holdings is whether the transcripts have been admitted into evidence. If the transcripts have been admitted into evidence, the jury may take them, along with all other exhibits, into the jury room when they retire to deliberate. Furthermore, *121 this Court has previously held that the admission of a recording and a transcript of a recording by a trial court is proper so long as the trial court instructs the jury that the tape is the primary evidence and any conflicts should fall in favor of the recording. Denson v. State, 858 So.2d 209, 211-12(¶ 11) (Miss.Ct.App.2003). In this case, the trial judge told the jury that "[the transcripts are] strictly for the purpose of assisting you as the trier of fact, but it's my duty to caution you to listen mainly to the audio  that's the important thing  the audio, but be assisted by the transcript itself." This instruction and the trial court's ruling were consistent with Denson, Dye, and Coleman, and the Uniform Circuit and County Court Rules. Therefore, there is no merit to this argument.

IV. Whether the trial court erred in denying a motion to quash the indictment or the venire
¶ 25. Farris and Frederick were indicted for violating Miss.Code Ann. § 97-9-27 which provides in relevant part that:
[e]very person who shall convey into the penitentiary ... any ... instrument ... or other things useful to any prisoner in his escape, with the intent thereby to facilitate the escape of any prisoner lawfully committed to or detained in such prison ... whether such escape be effected or attempted or not, shall, upon conviction, be punished by imprisonment....
¶ 26. When jury selection began in the trial court, the indictment was read to the entire venire. The indictment specifically stated that Farris was incarcerated for murder. Farris and Frederick maintain that there was no requirement for the indictment to recite the specific crime or for the court to read aloud to the jury that Farris had been convicted of murder. They assert that this was a violation of M.R.E. 404(b), was prejudicial beyond repair, and that the verdict should be overturned. M.R.E. 404(b) states that:
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 27. Farris and Frederick rely on Flowers v. State, 773 So.2d 309 (Miss.2000) in support of their assertion. In Flowers, the defendant was indicted separately for four murders. Flowers, 773 So.2d at 318(¶ 26). During the trial, the prosecution continually referenced the other victims, and there were repeated occurrences of the introduction of evidence of the other three murders. Id. at (¶ 26). On appeal, the Supreme Court reversed Flowers's conviction and remanded the case for a new trial finding that the prosecution's conduct amounted to multiple violations of M.R.E. 404(b) which may have inflamed and prejudiced the jury. Flowers, 773 So.2d at 317(¶ 20).
¶ 28. The State asserts that this assignment of error is procedurally barred and without merit. The State points out that no defense objection was offered contemporaneously to the reading of the indictment. The record reflects that only after voir dire was completed did defense counsel raise an ore tenus motion to quash the indictment or the venire on the basis of prejudice resulting from the murder reference in the indictment. The State contends that the failure to raise a contemporaneous objection bars review of the issue. Hull v. State, 687 So.2d 708 (Miss.1996).
*122 ¶ 29. In Hull, the defense failed to object contemporaneously to statements made by the trial judge during voir dire, but moved for a mistrial at the completion of voir dire. Hull, 687 So.2d at 718-20. The Supreme Court determined that the defense's failure to object contemporaneously barred review of the trial judge's comment. Hull, 687 So.2d at 720. In this case, the record reflects that not only did defense counsel fail to object, but also during voir dire, Frederick's counsel repeated to the venire that Farris was incarcerated for murder. Additionally, Frederick's defense counsel then announced that Frederick was incarcerated for auto burglary.
¶ 30. When the defense motion to quash the indictment or the venire was raised, the trial court stated that the motion was denied in part because proof of a prior conviction was a necessary element of the crime charged in the indictment. The trial court also pointed out that every member of the venire indicated that they presumed the defendants were innocent and that they would not be prejudiced by their prior convictions. The trial court offered to reopen the voir dire to allow the defense to question the venire on this subject. The defense declined the opportunity. Notwithstanding the Flowers decision, the facts of this case are consistent with the Supreme Court's holding in Buckley v. State, 511 So.2d 1354 (Miss.1987).
¶ 31. In Buckley, the defense objected to testimony in which the witness commented on the defendant's arrest record and snapped his fingers while testifying as if indicating that some great revelation had taken place after he had checked it. Buckley, 511 So.2d at 1356. After objecting, the defense in Buckley declined the trial court's offer to take corrective action. Buckley, 511 So.2d at 1357. Finding that no cognizable prejudice occurred which required reversal, the Supreme Court in Buckley pointed out that the defendant himself testified that he had at least one prior conviction. Id.
¶ 32. Before we continue with our analysis of this issue, we are reminded that it is presumed that jurors follow the instructions of the court, for to presume otherwise would be to render the jury system inoperable. Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985). The facts of this case implicate the Buckley decision; the statute under which Farris and Frederick were indicted required proof of an underlying conviction; the trial judge instructed the jury that their decision was not to be based on prior criminal activity; the defense failed to make a contemporaneous objection; the defense itself restated to the venire the fact that Farris had been convicted of murder; the defense itself introduced the fact that Frederick had been convicted for auto burglary; and the defense declined the trial judge's offer to take corrective action by re-examining the venire. Furthermore, Warden Blevins testified that Farris was serving a life sentence for his murder conviction. As previously mentioned, M.R.E. 404(b) provides that evidence of prior crimes may be admissible to show motive and intent. Farris's life sentence for murder was relevant and probative as to the issue of his motive and intent to conspire to facilitate his escape. This is an acceptable use of evidence of prior crimes under M.R.E. 404(b). In addition, as in Buckley, Farris and Frederick have failed to demonstrate how they were prejudiced. Accordingly, we find this issue to be without merit.

V. Whether the verdict was against the overwhelming weight of the evidence.
¶ 33. Farris and Frederick contend that the weight of the evidence was insufficient to support the verdict. They *123 assert that because Beaty made no attempt to take the hacksaw blades into the prison, and there was no evidence presented that Beaty and Hughes knew each other, the alleged conspiracy had not yet ripened into a criminal act. This position, however, is not consistent with the law of conspiracy.
¶ 34. Miss.Code Ann. § 97-1-1 states "[i]f two ... or more persons conspire ... to commit a crime ... each of them ... shall be guilty of a felony...." We need not address the significance of the fact that Beaty never brought the book into the facility because an overt act in furtherance of the conspiracy is not required to show that the offense is complete. Stubbs v. State, 845 So.2d 656, 672(¶ 60) (Miss.2003). There are, however, other requirements for proving a conspiracy which must be addressed. Each person involved in the conspiracy must know that "they are entering into a common plan and knowingly intend to further its common purpose." Mitchell v. State, 572 So.2d 865, 867 (Miss.1990). The agreement between the co-conspirators need not be formal or express, but may be inferred from the circumstances, such as by their declarations and acts, and by the conduct of the alleged conspirators. Stubbs, 845 So.2d at 672(¶ 60).
¶ 35. Having addressed the legal requirements for a conviction for conspiracy, we now turn to the standard of review for determining whether the verdict was against the overwhelming weight of the evidence.
In determining whether the verdict was against the overwhelming weight of the evidence, we must accept as true that evidence which supports the verdict. Reversal will be had only when we are convinced that the trial court abused its discretion in denying the motion. We will not order a new trial unless we are convinced the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. [O]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Rogers v. State, 796 So.2d 1022, 1030(¶ 27) (Miss.2001) (citation omitted).
¶ 36. With the standard of review in mind, we will now address the weight of the evidence. Warden Blevins testified that Farris received a letter through the United States Postal Service which contained instructions on how to assemble a bomb. This discovery prompted prison officials to begin monitoring Farris's incoming and outgoing correspondence and his telephone conversations. During the course of this investigation, Blevins inspected mail between Farris and Beaty, and between Frederick and Hughes. The letters, which were admitted into evidence, cumulatively discussed a cryptic reference to the purchase and delivery of blades to the prison for two hundred dollars; transportation arrangements; obtaining road maps of Mississippi, Alabama, and Georgia; buying wigs, hair dye, and false moustaches; and an admonition to get rid of the letters. Additionally, Exhibit S-2, the September 27th letter from Farris to Beaty, discussed the inmates traveling to Memphis and making a connection from there. As previously discussed, Farris was serving a life sentence for murder, and prison officials testified that he certainly would not be authorized to take a trip to Memphis or anywhere else.
*124 ¶ 37. Warden Blevin testified that in August 2001, prison authorities began monitoring Farris and Frederick's telephone conversations between their respective mothers, Beaty and Hughes. Several conversations were recorded and transcribed and offered into evidence. These conversations cumulatively referred to the purchase of blades and the fixing and mailing of books. On September 13, 2001, prison officials recorded a telephone conversation between Frederick and an unnamed woman in which Frederick made a reference to Desperado, Farris's nickname, and the woman indicated that she had mailed the book to Beaty. On September 18, 2001, Frederick called the same number and talked with a woman who referred to herself as his mother. During this conversation, the woman stated that she was on her way to the post office to mail the book, titled Red Storm Rising, to Beaty. Prison officials testified as to the receiving telephone numbers on each of these calls, and testified that they believed the woman to whom Frederick was talking was his mother, Hughes. This testimony and that opinion, as well as all other evidence, were challenged by vigorous cross-examination by three separate defense counsels. Finally, prison officials testified that based upon their surveillance, they began looking for a hacksaw blade to be delivered to the facility, and that after an October visit by Beaty to her son Farris, prison authorities searched her vehicle and discovered in the trunk hacksaw blades embedded in the spine of a book, titled Red Storm Rising.
¶ 38. The Supreme Court has held that the existence of a conspiracy, and a defendant's membership in it, may be proven entirely by circumstantial evidence. Davis v. State, 485 So.2d 1055, 1058 (Miss. 1986). Furthermore, we point out that "factual disputes are properly resolved by a jury and do not mandate a new trial." Benson v. State, 551 So.2d 188, 193 (Miss. 1989). The State offered testimonial and documentary evidence to support each element of the offenses charged in the indictment. Farris and Frederick had every opportunity to present their defenses and to subject that evidence to the crucible of cross-examination. Accepting as true the evidence which supports the verdict, the record reflects that the evidence was sufficient for a reasonable, hypothetical juror to infer an agreement between the defendants, based on their acts and conduct, to enter into a common plan to further the common scheme of conveying articles useful for escape to felons. The jury's verdict is not against the overwhelming weight of the evidence.

VI. Whether The Trial Court Incorrectly Commented To The Jury Regarding The Defendant's Presumption Of Innocence.
¶ 39. In addition to the foregoing, Frederick asserts that the trial judge erred when he made the following statement to the venire:
First of all, number one, that the Defendants come before the Court clothed with a presumption of innocence, and that presumption stays with them. It goes with them throughout the course of the trial, until and unless the State of Mississippi makes out a prima facie case, and that  that clothing ceases at that time.
Frederick maintains that he was denied a fair trial because the trial judge misstated to the venire the universally accepted standard that the presumption of innocence remains with the defendant until he has been proven guilty beyond a reasonable doubt. Miller v. State, 198 Miss. 277, 22 So.2d 164, 166 (1945).
¶ 40. The State argues that Frederick's failure to state a contemporaneous objection *125 bars this Court's review of this issue. Hull, 687 So.2d at 719 (holding that review of judicial comment made during voir dire regarding presumption of innocence was barred for failure to object).
¶ 41. Alternatively, the State argues that the trial court's grant of Instruction D-3 cured any arguable error. Instruction D-3 reads as follows:
The Court instructs the jury that at the outset of a trial a defendant is presumed to be wholly innocent of the crime charged, a defendant is not required to prove himself or herself innocent or put on any evidence at all. In considering testimony in the case you must look at the testimony and view it in the light of that presumption which the law clothes each defendant with, that he or she is wholly innocent, and it is a presumption that abides with each defendant throughout the trial of the case until the evidence convinces you to the contrary beyond all reasonable doubt of the defendant's guilt.
¶ 42. In Goodin v. State, 787 So.2d 639 (Miss.2001), the Supreme Court found that it was clearly error for the prosecutor to instruct the prospective jury as to the law during voir dire. However, the Supreme Court found that the error was harmless as the verdict rendered in the trial was unattributable to the misstatements. The jurors in Goodin were later properly instructed both in written and oral form as to the burden of proof by the trial judge, and they were instructed to apply those rules to the evidence in reaching a verdict. Goodin, 787 So.2d at 648(¶ 28). See Crawford v. State, 515 So.2d 936, 939 (Miss. 1987) (appellant's contention that State made improper comment during voir dire barred by failure to object; thorough instruction to jury on the presumption of innocence cured any error).
¶ 43. The Goodin and Crawford decisions makes clear that Frederick's assertion is without merit. This Court is unable to find that the verdict was attributable to the trial judge's misstatement to the venire. The record reflects that the State appropriately bore the burden of proof and offered sufficient, credible evidence as to each element of the offenses charged, and the trial court properly instructed the jury, prior to their deliberations, on the presumption of innocence and the burden of proof. Based on the foregoing, this final assignment of error is without merit, and Farris and Frederick's convictions are affirmed.
¶ 44. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF STEVEN FARRIS AND THOMAS FREDERICK OF CONSPIRACY TO CONVEY ARTICLES TO FELONS USEFUL FOR ESCAPE AND SENTENCE OF FIVE YEARS EACH TO RUN CONSECUTIVELY WITH SENTENCES APPELLANTS ARE CURRENTLY SERVING IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.