# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-02004-SCT

*VANCE DRUMMER*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/2012 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | GARY GOODWIN |
| | FORREST ALLGOOD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE PUBLIC DEFENDER |
| | BY:  GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LISA L. BLOUNT |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED IN PART, VACATED IN PART, AND THE CASE IS REMANDED FOR RESENTENCING - 07/02/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

**PART ONE**

¶1. A jury convicted Vance Drummer of two counts of grand larceny and one count of attempted grand larceny in Lowndes County Circuit Court in 2012. The trial court granted the State's request for a flight instruction because Drummer, after absconding with the stolen goods, fled from police when they attempted to pull him over after he had run a stop sign in Mathiston, Mississippi. The trial court sentenced Drummer as an habitual offender pursuant to Mississippi Code Section 99-19-81. One of the felony convictions the State used to prove Drummer's status as an habitual offender was the felony-fleeing conviction to which he pled guilty as a result of his flight from police in Mathiston. We find that the trial court erred when it sentenced Drummer as an habitual offender. Drummer's flight from police arose from the same nucleus of operative facts as the larcenies for which he was convicted and therefore should not have been used as a predicate felony pursuant to Section 99-19-81. Accordingly, Drummer's sentence as an habitual offender is vacated, and we remand this case to the Lowndes County Circuit Court for resentencing of Drummer as a nonhabitual offender.

**FACTS AND PROCEDURAL HISTORY**

¶2. The relevant facts are found in the Court of Appeals' opinion:

> While finishing his patrol around 3:55 a.m. on January 2, 2009, Officer Happ Anderson witnessed a vehicle run through a four-way stop in Mathiston, Mississippi, which is located in both Webster County and Choctaw County. The vehicle, a white utility van, was pulling a trailer loaded with a John Deere lawnmower. Officer Anderson turned on his siren and flashed his lights as he pulled behind the van heading west on Highway 82. As Officer Anderson later testified at trial, for the majority of the highway chase, he and the van drove in excess of ninety miles per hour. When the van's driver, later identified as Drummer, failed to slow down or otherwise respond to his pursuit, Officer Anderson attempted to pass the van. However, each time Officer Anderson

2

tried this maneuver, Drummer swung the trailer into the left lane to prevent Officer Anderson from pulling alongside the van.

Officer Anderson contacted another law enforcement officer in a nearby town. This second officer attempted to stop the van by parking his patrol car in the westbound lanes of the highway. However, Drummer managed to drive around the roadblock and continue along Highway 82. After passing Winona, Mississippi, about forty miles from Mathiston, Officer Anderson's radio signal failed, and he called 911 for assistance. The dispatcher eventually reached law enforcement officers in Leflore County, who were able to set up a roadblock at the county line between Carroll County and Leflore County before the van reached them.

As the van neared the roadblock, Drummer turned into a church parking lot and hit a light pole. Drummer then exited the van and, with the police pursuing him, ran through a pasture and into a utility shed. When Drummer refused to exit the utility shed, the police officers sent a police dog into the shed. Soon after the dog entered the shed, Drummer exited. An inspection of both the van and the utility shed confirmed that Drummer was the only person involved in the chase. The police's investigation revealed that the white van, trailer, and John Deere lawnmower had been stolen from businesses in Columbus, Mississippi, which is situated in Lowndes County. The white van was stolen from Thompson Truck Center, and the trailer and John Deere lawnmower were both stolen from Agri-Turf, located about a mile down the road from Thompson Truck Center. Police also learned in the course of their investigation that one of Thompson Truck Center's trucks had sustained interior damage when someone had apparently tried to start the vehicle without a key.

*Drummer v. State*, 2014 WL 3409099, *1 (¶¶ 2-4) (Miss. Ct. App. July 15, 2014).

¶3.     In 2009, Drummer pled guilty to felony fleeing[1] in Webster County, the county where his flight from police began. Drummer was indicted for two counts of grand larceny and one count of attempted grand larceny in Lowndes County in 2009, but he was not brought to trial

---

[1]*See* Miss. Code Ann. § 97-9-72(2) (Rev. 2014).

on those charges until November 27, 2012.[2] On November 26, 2012, the day before trial began, the State filed a motion to amend Drummer's indictment to charge him as an habitual offender. The trial court granted the motion and amended Drummer's indictment the same day that his trial began.[3] One of the two predicate felonies used by the State to establish Drummer's habitual-offender status was his 2009 felony-fleeing conviction in Webster County.

¶4.     The Lowndes County jury convicted Drummer of two counts of grand larceny and one count of attempted grand larceny. At the sentencing hearing, the trial court found that the two predicate felonies proven by the State were sufficient to allow the court to sentence Drummer as an habitual offender pursuant to Section 99-19-81. Accordingly, Drummer was sentenced to ten years without the possibility of parole on each count, with the sentences for Counts I and II to run consecutively, and the sentence for Count III to run concurrently with the sentence for Count II. Drummer appealed, and the Court of Appeals affirmed his convictions and sentences.

¶5.     Drummer petitioned this Court for a writ of *certiorari*, asking us to review whether the trial court erred in granting the State's flight instruction and whether it erred in

---

[2]Drummer filed a motion for a speedy trial, and the trial court held a hearing on the motion on November 19, 2012. The trial court held that Drummer's right to speedy trial was not violated, and Drummer has not raised this issue on appeal.

[3]Counsel for Drummer did not object to the timing of the motion to amend. When asked whether there was any surprise that Drummer was eligible to be tried as an habitual offender, counsel for Drummer stated that there was not.

sentencing him as an habitual offender. Having granted Drummer's petition, we now proceed to analyze those issues.

## ANALYSIS

### I. The trial court erred in sentencing Drummer as an habitual offender.

¶6. Because Drummer's flight was so inextricably intertwined with his commission of larceny that the trial court found a flight instruction to be proper, it is obvious that the same flight could not be used as a predicate felony "arising out of" a separate incident for the purpose of habitual-offender sentencing. *See* Miss. Code Ann. § 99-19-81 (Rev. 2007).

¶7. Mississippi Code Section 99-19-81 permits the trial court to sentence a defendant to the maximum term of imprisonment for the felony of which he is convicted without the possibility of parole if that defendant has "been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times . . . ." To qualify as a predicate felony for purposes of Section 99-19-81, both prior convictions must arise out of separate incidents, meaning they must be separate from each other and from the felony for which the defendant is being sentenced. Drummer contends that his felony-fleeing conviction cannot be used as a predicate felony because it arose out of a common nucleus of operative facts with the larcenies. He argues that the flight from the crime scene was a continuation of the crime of larceny; and, although chargeable as another offense, it is not sufficiently separate from the crime of larceny to be a stand-alone predicate felony.

5

¶8. But before we address Drummer's specific argument, we must speak to the interpretation of the habitual-offender statute advanced by my esteemed colleague, Justice Coleman. According to him, Section 99-19-81 "contains no requirement that either predicate felony arise 'out of separate incidents at different times' *from the primary felony*." Coleman Op. at ¶ 61 (emphasis added). Respectfully, this interpretation twists the language of Section 99-19-81 and constrains the clear intention of the Legislature. In practice, most prosecutors and criminal defense attorneys throughout this State understand that Section 99-19-81 requires both that the predicate felonies be separate from each other *and* from the felony for which the defendant currently is being sentenced.

¶9. More importantly, this Court has stated such on at least two occasions. In **Buckley v. State**, this Court wrote that "*[a] prior offense* may be considered under the statute even if [it] occurred on the same day as the *instant offense as long as the two charges arose from 'separate incidents.'*" **Buckley v. State**, 511 So. 2d 1354, 1359 (Miss. 1987) (emphasis added). And in **Crawley v. State**, 423 So. 2d 128, 129 (Miss. 1982), this Court said that "[a]lthough one of the *previous offenses* occurred on the same day as the *one included in the present case*, it was *separately brought and arose out of a separate incident* which occurred at a different time of day *which brings it clearly within the statute*." (Emphasis added.) Justice Coleman acknowledges that **Crawley** supports our interpretation, but dismisses the quoted language as dicta. Coleman Op. at ¶ 67. To the contrary, we view the language as this Court's interpreting, as a matter of course, the statute's language the same way that we

6

do. In short, this Court long has held that the predicate felonies must be separate from each other *and* from the felony for which the defendant currently is being sentenced.

¶10. As for Drummer's argument that his flight from the crime scene was a continuation of the crime of larceny and therefore not sufficiently separate from the larceny to be a stand-alone predicate felony, this Court has held that crimes occurring on the same day may nevertheless be "separate incidents at different times" for purpose of habitual sentencing. *Jackson v. State*, 518 So. 2d 1219, 1220 (Miss. 1988). As for when two incidents are sufficiently separate and apart to qualify for enhanced sentencing, the law is mixed. In *Riddle v. State*, 413 So. 2d 737 (Miss. 1982), the defendant broke into a trailer home, kidnapped a young girl, took her away, and raped her. He was tried on all three charges and convicted. *Id.* at 738. The trial court sentenced Riddle to life imprisonment as an habitual offender pursuant to Section 99-19-81, using two of the three crimes for which he was convicted as the enhancing felonies. *Id.* On appeal, this Court held that the habitual-offender statute was inappropriately applied because all of the offenses "arose out of a single incident." *Id.*

¶11. In *Pittman v. State*, 570 So. 2d 1205 (Miss. 1990), this Court noted that the offenses in *Riddle* could not be used as predicate offenses for the purpose of habitual-offender sentencing because they "arose out of a common temporal nucleus of operative fact and did not qualify as separate incidents at different times." *Id.* at 1206 (quotation omitted). The Court noted, however, that the law remained unclear when the predicate offenses were sufficiently separate to qualify for habitual sentencing.

> We do not write upon a clean slate. We have on several occasions held that "priors" arising out of incidents occurring on the same date may nevertheless

be "separate incidents at different times" within Section 99-19-81. ***Nicolaou v. State***, 5[3]4 So. 2d 168, 173 (Miss. 1988); ***Jackson v. State***, 518 So. 2d 1219 (Miss. 1988); ***Burt v. State*** 493 So. 2d 1325, 1329 (Miss. 1986); *see also* ***Crawley v. State***, 423 So. 2d 128, 129 (Miss. 1992). In ***Burt*** the defendant broke and entered two dwelling houses at "Route 1, Duck Hill, Mississippi" on June 26, 1980, and we held these separate incidents because Burt had burglarized "separate dwellings occupied by two individuals." ***Burt***, 493 So. 2d at 1329. In ***Nicolaou*** the priors concerned a robbery and two kidnappings that took place following the completion of two murders, all of which were a part of the same continuous crime spree but which we held "separate incidents" within Section 99-19-81. ***Nicolaou***, 534 So. 2d at 173. These cases, however, afford no bright line rule telling us how separate the incidents must be, nor how different the times must be.

***Pittman***, 570 So. 2d at 1207.

¶12. In ***Pittman***, the Court held that two burglaries of adjacent schools with a common fence on the same illegal excursion qualified as "separate incidents" for purpose of habitual sentencing. ***Id.*** Because the two schools were separate places, "notwithstanding their proximity and common use of the auditorium and cafeteria," the burglaries of the two schools were separate incidents. ***Id.***

¶13. Here, we must determine whether Drummer's flight from police in Webster County was sufficiently separate and distinct from his earlier larcenies and attempted larceny earlier in Lowndes County. The Court of Appeals held that the fleeing and larceny offenses did not "arise from a common nucleus of operative facts." ***Drummer***, 2014 WL 3409099, at *12 (¶ 45). The crimes were separate because they "occurred at different times of day, occurred in different cities and counties, required different criminal intents, involved different victims, and required different elements of proof." ***Id.*** The Court of Appeals ultimately determined

that the larceny had been completed in Lowndes County, and the separate offense of fleeing was not a continuation of the asportation element of larceny. *Id.* at *14 (¶ 52).

¶14.    However, this conclusion belies the State's argument at trial that the flight from police was related to the larcenies.  In seeking the flight instruction, the State argued that Drummer "absolutely fled the scene of the crime."  It averred that he was apprehended traveling away from the place from which he had stolen the van and lawn mower. The prosecutor argued that the only explanation for the flight was Drummer's guilty knowledge of the larcenies that he had committed in Lowndes County. Having taken the position that flight was sufficiently probative of Drummer's guilt on the larceny charges to warrant a flight instruction, the State could not credibly argue that the flight failed to arise from a common nucleus of operative fact.

¶15.    Although the larcenies became completed crimes as soon as Drummer had removed the property from the owners' possession and control, it is well established that "larceny is a continuous offense, and is being committed at all times during which the thief deprives the owner of the stolen property of possession."[4] *Walker v. State*, 188 Miss. 177, 183, 189 So. 804, 806 (1939). Drummer stole the items so he could take them somewhere else, which is what he was in the process of doing when he ran the stop sign in Webster County. He still

---

[4] In order to obtain a larceny conviction, the State must prove that the criminal defendant had the " intent permanently to deprive the owner of his property." *Lewis v. State*, 248 So. 2d 805, 806 (Miss. 1971); *accord* *Simmons v. State*, 208 Miss. 523, 44 So. 2d 857 (1950); *Hubbard v. State*, 41 So. 2d 1 (Miss. 1949); *Littlejohn v. State*, 59 Miss. 273 (1881).

was engaged in the crime of larceny when he fled police. This was a single chain of events arising out of a common nucleus of operative fact.

¶16.    The Court of Appeals confronted a similar situation in ***Bergeron v. State***, 60 So. 3d 212 (Miss. Ct. App. 2011). There, the defendant's two prior convictions were a burglary and a theft—he broke into a car dealer's office, stole some keys, and used the keys to steal a car. ***Id.*** at 216 (¶ 11). The Court of Appeals found that "[t]here was only one victim and one intent, to steal a car." ***Id.*** Accordingly, the two crimes arose out of the same incident. ***Id.*** In so holding, the Court of Appeals acknowledged this Court's holding in ***Riddle***. There, as recounted above, the defendant committed a burglary and a kidnapping to accomplish a rape. The burglary and kidnapping arose out of the same incident as the rape.

¶17.    Here, Drummer stole the van and trailer, committing larceny, and fled when confronted by police so that he could get away with larceny. Drummer's intent with respect to the larceny and the flight was essentially the same: to steal some chattels and not be caught. The felony-fleeing conviction was not available to the State as a predicate felony for purposes of habitual-offender sentencing because it arose from the same incident as the larceny for which Drummer was being sentenced. Drummer must be resentenced as a nonhabitual offender, because "the State is not entitled to a second chance to prove a defendant's habitual-offender status on remand, because that would violate the prohibition against double jeopardy under the Mississippi Constitution." ***Grayer v. State***, 120 So. 3d 964, 969-70 (¶ 20) (Miss. 2013).

## CONCLUSION

10

¶18. Because one of Drummer's predicate felonies used for sentencing him as an habitual offender arose out of the same incident as the crime for which he was being sentenced, the trial court erred in sentencing him as an habitual offender. Accordingly, we vacate Drummer's sentence and remand the case to the Circuit Court of Lowndes County for resentencing as a nonhabitual offender. The judgment of the Court of Appeals is reversed with respect to the habitual-offender sentencing. The judgment of the Circuit Court of Lowndes County is vacated in part, and the case is remanded for resentencing.

## RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:

## PART TWO

**Was a flight instruction proper?[5]**

¶19. We will overturn a trial court's giving of a jury instruction only where the trial court abused its discretion. ***Higgins v. State***, 725 So. 2d 220, 223 (Miss. 1998). Jury instructions must be read "as a whole with no one instruction taken out of context." ***Id.*** at 223 (quoting ***Jackson v. State***, 645 So. 2d 921, 924 (Miss. 1994)).

¶20. Vance Drummer argues on appeal that the trial court erred in giving the following instruction to the jury in his case:

> The Court instructs the Jury that "Flight" is a circumstance from which guilty knowledge may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, VANCE DRUMMER, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the Defendant, VANCE DRUMMER.

---

[5]This was raised by Drummer on appeal as Issue Number One.

¶21.    Drummer argues on appeal that the giving of the instruction was improper because there was an independent reason for Drummer's flight other than guilty knowledge of the larcenies. Drummer argues this Court should consider reasons not presented to the judge or jury below:[6] (1) he fled to avoid the legal consequences of running the stop sign, and (2) the alleged flight was part of the offense of larceny because there can be no larceny without asportation of the goods.

¶22.    Flight instructions repeatedly have  been approved by this Court for almost ninety years, in contrast to the dissent's claim of rarity. (Kitchens Op. at ¶53). *See Harrell v. State*, 134 So. 3d 266, 276 (Miss. 2014) (finding no error in the grant of a flight instruction); *accord Shumpert v. State*, 935 So. 2d 962, 970 (Miss. 2006); *accord Walker v. State*, 913 So. 2d 198, 234 (Miss. 2005); *Randolph v. State*, 852 So. 2d 547, 566 (Miss. 2002) ("The trial court did not err in admitting the flight evidence and instructions . . . ."); *Wall v. State*, 718 So. 2d 1107, 1112 (Miss. 1998) (finding that because the defendant provided no excuse and that his flight was probative of guilty knowledge "the flight instruction was appropriate"); *accord Warren*, 709 So. 2d 415, 420 (Miss. 1998); *Brown v. State*, 690 So. 2d 276, 294 (Miss. 1996) (finding a flight instruction was warranted); *accord Holly v. State*, 671 So. 2d 32, 37 (Miss. 1996); *accord  Reynolds v. State*, 658 So. 2d 852, 857 (Miss. 1995); *Evans v. State*, 579 So. 2d 1246, 1248-49 (Miss. 1991) (finding the defendant's stated flight

---

[6] At trial, Drummer presented no testimony and called no witnesses on his behalf. Drummer's counsel objected to the giving of the flight instruction at trial due to a lack of connection between Drummer and the scene of the larcenies. The trial court determined that, because there was sufficient evidence of flight and because "there's no explanation offered by the defense or anybody on the defendant's behalf," the instruction was warranted.

excuse of "fear" not a legal explanation in light of the facts and that the trial judge therefore properly granted a flight instruction); *Brock v. State*, 530 So. 2d 146, 153 (Miss. 1988) (affirming the grant of a flight instruction); *Clark v. State*, 503 So. 2d 277, 280 (Miss. 1987) ("[T]he trial court acted properly in granting the flight instruction."); *accord Pharr v. State*, 465 So. 2d 294, 304 (Miss. 1984); *Sims v. State*, 142 So. 468, 469 (Miss. 1932) ("We do not think that there was error in giving this instruction."); *Ransom v. State*, 115 So. 208, 209 (Miss. 1928) (affirming a flight instruction); *Tatum v. State*, 107 So. 418, 419 (Miss. 1926) ("The instruction embodies a correct principle of law and was applicable to this case under the evidence.").

¶23.   The flight instruction approved by the Court in *Tatum* has been refined to that used by the trial judge in this case. In applying caselaw concerning flight instructions, the *Ransom* court stated:

> As we understand the law of flight, it is to be considered in connection with all the other evidence in the case, and the jury will determine from all the facts whether this flight was from a conscious sense of guilt, or whether it was caused from other things, and give it such weight as the jury thinks it is entitled to, in connection with all the other evidence in the case.

*Ransom*, 115 So. at 210. Flight instructions were reaffirmed shortly after *Ransom* in *Sims*, 142 So. at 469.

¶24.   Our flight-instruction jurisprudence was refined in *Pannell v. State*, 455 So. 2d 785, 788 (Miss. 1984), which, in adding the requirement of "unexplained flight," produced the two-part unexplained-and-probative test still in use today. Prosecutors may obtain a flight instruction only if "that flight is unexplained and somehow probative of guilt or guilty

13

knowledge." *Reynolds*, 658 So. 2d at 856. "[F]light is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected with the case." *Randolph*, 852 So. 2d at 564.

¶25.   In a special concurrence in *Pannell*, Justice Robertson expressed a concern with flight instructions, calling for their abolition, but he failed to draw a single vote. *Pannell* 455 So. 2d at 789-90.  Within three months after writing in *Pannell*, Justice Robertson, writing for the Court, affirmed a flight instruction on facts substantially similar to those in this case. *Pharr*, 465 So. 2d at 304. The defendant fled and the police gave chase, ultimately forcing the defendant off the road. *Id.* Approving the instruction by the trial court that "unexplained flight is a circumstance from which an inference of guilty knowledge may be inferred," the Court further held that "under the most recent pronouncement of this Court concerning flight, *Pannell v. State*, and having due regard for the evidence at trial, the instruction was proper." *Id.*[7]

¶26.   The United States Supreme Court addressed Justice Robertson's concerns long before he penned his special concurrence, observing that an innocent may "hesitate to confront a

---

[7]On occasion, other justices have expressed concerns, centered on improperly given flight instructions leading to error and reversal in what were otherwise solid convictions. *See Randolph v. State*, 852 So. 2d 547, 567-68 (Miss. 2002) (Carlson, J., concurring) (describing flight instructions as "dangerous" and unnecessary, yet joining the majority holding that the instruction "was proper, based on the facts and circumstances" of the case and the caselaw). *See also Shumpert v. State*, 935 So. 2d 962, 973 (Miss. 2006) (Carlson, J., specially concurring). He further wrote the trial judge "acted consistent with our case law in granting the state's proposed flight instruction" and that "[t]his Court is not prepared to condemn flight instructions." *Id.* at 973-74. Though former Justices Hawkins, Carlson, and Robertson expressed concerns with flight instructions, they nevertheless affirmed their use. *See id.*; *Pharr*, 465 So. 2d 294.

14

jury" due to a want to avoid such consequences as the cost of defending a suit or the "popular odium of an arrest and trial." *Alberty v. United States*, 162 U.S. 499, 510-11, 16 S. Ct. 864, 40 L. Ed. 1051 (1896). Despite that concern, it nevertheless endorsed the use of flight instructions, finding error only as to the content of the instruction given in *Alberty*.[8]

> While there is no objection to that part of the charge which permits the jury to take into consideration the defendant's flight from the country as evidence bearing upon the question of his guilt, . . . [t]he criticism to be made upon this charge is that it lays too much stress upon the fact of flight, and allows the jury to infer that this fact alone is sufficient to create a presumption of guilt.

*Id.* Less than a year later, the Supreme Court affirmed a flight instruction–stating that *Alberty* was not meant to

> intimat[e] that the flight of the accused was not a circumstance proper to be laid before the jury as having a tendency to prove his guilt. . . . Indeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt.

*Allen v. United States*, 164 U.S. 492, 499, 17 S. Ct. 154, 41 L. Ed. 528 (1896); *accord Williams v. State*, 667 So. 2d 15, 22 (Miss. 1996) ("[T]he demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence.").

¶27. As the Court of Appeals found, "the record provides no evidence that would support an independent reason or basis for Drummer's flight from law enforcement." *Drummer v. State*, 2014 WL 3409099, *5 (¶ 17) (Miss. Ct. App. July 15, 2014). The reasons now argued do not explain the sixty-mile excursion from the Hill Country to the Delta, at speeds exceeding ninety miles per hour, followed by a dash into the woods on foot. *See Evans*, 579

---

[8]For the complete content of the *Alberty* instruction, see the attached Appendix.

15

So. 2d at 1248-49 (finding the defendant's stated flight excuse of "fear" not a legal explanation in light of the facts and that the trial judge therefore properly granted a flight instruction). Drummer's acts involving a high-speed chase to avoid apprehension by lawful authorities, evasion of a roadblock and multiple officers, fleeing on foot after the stolen vehicle he was driving was incapacitated, and finally hiding in a shed are at least "somewhat probative" of guilty knowledge. **Reynolds**, 658 So. 2d at 857. Confirming he indeed fled, Drummer previously had pleaded guilty to felony "fleeing."[9] His acts possess sufficient probative value of his consciousness of guilt that the trial court's giving of a flight instruction was proper.[10] *See id.;* **Pannell**, 455 So. 2d at 788.

¶28.    A flight instruction is not an impermissible comment on the evidence, but it can be a beneficial guide to jurors to not place undue weight on flight alone. When presented with evidence of flight, uninstructed jurors may convict a defendant simply because he fled from the scene of the crime. A properly drafted flight instruction can serve to protect innocents from jurors who might assign disproportionate weight to flight evidence by instructing jurors that they must consider *all* other evidence and may not rely solely on flight evidence.

---

[9]In the presentence investigation, Drummer admitted he had three prior felonies: taking a motor vehicle, possession of stolen property, and felony fleeing.

[10]This Court approved a flight instruction on facts substantially similar to Drummer's. In **Sims**, 142 So. at 469, the defendant

> had left the scene of the homicide and was several miles away, and his statement to the officers showed that he had run part of the way; and we think it was competent for the court to instruct the jury that they might consider the circumstance of flight in connection with the other evidence in the case in determining whether the defendant was guilty or innocent.

16

¶29. We have reversed the giving of flight instructions for various reasons,[11] however none of these reasons is present here. According to our law at the time of Drummer's trial, and according to the proof admitted, evidence of Drummer's flight was relevant.[12] There was sufficient, admissible evidence of Drummer's guilt to warrant the giving of the flight instruction in this case. *See Williams*, 667 So. 2d at 22 ("[T]he demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence."). His proffered explanation that he fled to avoid a ticket for running a stop sign

---

[11]For insufficient evidence, *see States v. State*, 88 So. 3d 749, 758 (Miss. 2012); *Pannell*, 455 So. 2d at 788; *Eubanks v. State*, 85 So. 2d 805, 806 (Miss. 1956). For inadmissible evidence, *see Liggins v. State*, 726 So. 2d 180, 183 (Miss. 1998); *Fuselier v. State*, 468 So. 2d 45, 57 (Miss. 1985). For improper form, *see Craft v. State*, 271 So. 2d 735, 736 (Miss. 1973); *Quarles v. State*, 199 So. 2d 58, 61 (Miss. 1967). *See also Ervin v. State*, 136 So. 3d 1053, 1056-1060 (Miss. 2014) (finding (1) guard's inability to identify Ervin as the prisoner who escaped from a hospital while in his custody and (2) evidence that Ervin hid in an attic to avoid arrest by federal marshals for unknown charges unrelated to the armed robbery for which he was being tried, failed to provide evidentiary support for the giving of a flight instruction); *Banks v. State*, 631 So. 2d 748, 748-49 (Miss. 1994) (finding error in the trial judge's excluding evidence of defendant's explanation for his flight but still granting a flight instruction).

[12]Our rules of evidence and caselaw allow evidence of unexplained flight if it is somewhat probative and does not fail the Rule 403 balancing test. "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules." M.R.E. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403. A trial judge determines if there is sufficient evidence of flight for it to be presented to the jury, and the judge may exclude flight evidence if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant from its introduction. *See, e.g., Williams,* 667 So. 2d at 22. For the application in an instruction context, *see Fuselier*, 468 So. 2d at 57.

was not legally sufficient in light of the facts, and in any event, that explanation was not proffered at trial.

¶30.   Likewise, Drummer's argument on appeal that the flight provided the asportation element of the offense of larceny, thereby providing an independent reason for flight, is without merit. As the Court of Appeals properly stated, "the asportation element of larceny is satisfied by even a slight movement of another's property after one wrongfully takes possession and control of the property." *Drummer*, 2014 WL 3409099, at 5 (¶ 18)(citing *Harbin v. State*, 402 So. 2d 360, 361-62 (Miss. 1981); *Mapp v. State*, 162 So. 2d 642, 645 (Miss. 1964)). Even if the crime of larceny was still in progress, all elements of the completed crime were present long before Drummer began his flight from the officer.

¶31.   The Court of Appeals found no abuse of discretion and neither do we. The judgment of the Court of Appeals concerning the trial court's giving of the flight instruction is affirmed.

¶32.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART.  COUNT I: CONVICTION OF GRAND LARCENY, AFFIRMED. SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, VACATED AND THE CASE IS REMANDED FOR RESENTENCING.  COUNT II: CONVICTION OF GRAND LARCENY, AFFIRMED.  SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, VACATED AND THE CASE IS REMANDED FOR RESENTENCING.  COUNT III: CONVICTION OF ATTEMPTED GRAND LARCENY, AFFIRMED.  SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, VACATED AND THE CASE IS REMANDED FOR RESENTENCING.**

**PART I: WALLER, C.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART II AND DISSENTS IN PART I WITH**

**SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., PIERCE AND COLEMAN, JJ. COLEMAN, J., CONCURS IN PART II AND DISSENTS IN PART I WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J.**

**PART II: WALLER, C.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., CONCURS IN PART I AND DISSENTS IN PART II WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J. COLEMAN, J., CONCURS IN PART II AND DISSENTS IN PART I WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J.**

**APPENDIX OF *ALBERTY* FLIGHT INSTRUCTION**

***Alberty v. United States***, 162 U.S. 499, 508-09 (1896).

You take into consideration, in other words, the facts and circumstances which led up to the killing, the facts and circumstances that transpired at the time of the killing; and you do not stop there, but you take into consideration the facts and circumstances as affecting the defendant subsequently to the killing. For instance, you take into consideration the defendant's flight from the country—his going into another part of the country—as evidence; and you are to pass upon the question as to whether or not he has sufficiently explained away the presumption which the law says arises from flight when a man has taken human life. It is a principle of human nature—and every man is conscious of it, I apprehend–that, if he does an act which he is conscious is wrong, his conduct will be along a certain line. He will pursue a certain course not in harmony with the conduct of a man who is conscious that he has done an act which is innocent, right, and proper. The truth is–and it is an old scriptural adage—"that the wicked flee when no man pursueth, but the righteous are as bold as a lion." Men who are conscious of right have nothing to fear. They do not hesitate to confront a jury of their country, because that jury will protect them. It will shield them, and the more light there is let in upon their case the better it is for them. We are all conscious of that condition, and it is therefore a proposition of the law that, when a man flees, the fact that he does so may be taken against him, provided he does not explain it away upon some other theory than that of his flight because of his guilt. A man accused of crime hides himself, and then absconds. From this fact of absconding, we may infer the fact of guilt. This is a presumption of fact, or an argument of a fact from a fact.
. . .
Flight by a defendant is always relevant evidence when offered by the prosecution, and that it is a silent admission by the defendant that he is unwilling or unable to face the case against him. It is in some sense, feeble or strong, as the case may be, a confession; and it comes in with the other incidents, the corpus delicti being proved, from which guilt may be cumulatively inferred.

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART TWO AND DISSENTING FROM PART ONE:**

¶33. I am in accord with Justice Coleman in opining that the Lowndes County Circuit Court did not err in sentencing Drummer, based on a purely objective reading of Section 99-19-81. Thus I dissent to Part I of the majority opinion.

¶34. The statute provides the rule of law, and not a single habitual-offender case supports the majority's innovative interpretation.

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Rev. 2007).

¶35. A plain reading of these words in the order written leads to the conclusion that only the prior felonies are required to be separate and distinct from each other. "Every person convicted in this state of a felony" describes the present charge—the one for which the defendant may be sentenced as a habitual offender if the remainder of the statute is satisfied. The defendant must have twice previously been convicted of a felony or federal crime. The priors must have been separately brought and must have arisen out of separate incidents at different times. In other words, the priors must be separate and distinct from each other. Finally, the priors must each have resulted in a sentence of one year or more. If these

20

elements are met, the trial court must sentence the defendant on the present charge to the maximum term of imprisonment prescribed by law.

¶36.    The majority's interpretation is alluring, but is available only by rearranging the King's English and the clauses used in the statute.[13] Our role is to objectively and dispassionately interpret statutes, using the basic rules of grammar and mechanics applicable to standard American English.[14] Following this most basic of standards, only the prior charges must be separate from each other. This statute is composed of a single sentence. The only punctuation occurs at the sentencing portion of the statute relating to sentencing on the present charge. The statute lists two main requirements: a person convicted of a felony (1) who shall have twice previously been convicted of a felony and (2) who shall have been sentenced to separate terms. If these requirements are met, the person shall be sentenced to the maximum term on the present charge. The defendant clearly had yet to be sentenced on the present charge, leaving only proof of the two prior sentences to be shown. The language within the "twice previously" clause does not refer back to the present charge any more than the "separate sentence" requirement does.

¶37.    A thorough review of our habitual-offender cases shows that all that is required is that the prior charges be separate and distinct from each other. There has never been a separate

---

[13] When engaging in statutory interpretation, this Court's duty is "to neither broaden nor restrict the legislative act." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 156 (Miss. 2006). Additionally, "courts cannot restrict or enlarge the meaning of an unambiguous statute." *Green v. Cleary Water, Sewer & Fire Dist.*, 910 So. 2d 1022, 1027 (Miss. 2005).

[14]*See **White Cyprus Lakes Dev. Corp. v. Hertz**, 541 So. 2d 1031, 1035 (Miss. 1989) ("It would strain credulity as well as the grammatical rules of the English language to reach the result sought by the development company.").

requirement that the present charge be separate from the priors. In *Riddle v. State*, 413 So. 2d 737, 738 (Miss. 1982), the defendant was separately charged with the kidnapping and rape of an eight-year-old girl and the burglary of her home. The cases were consolidated and the defendant was convicted on all three charges. *Id.* Although the opinion is unclear on the particulars, the trial judge used two of the three convictions to sentence the defendant as a habitual offender on the third. *Id.* at 738. No matter which charge anyone selects as the "present" charge, the other two "priors" arose out of a single incident. *Id.* The defendant twice previously had been convicted of felonies in separate charges and sentenced to more than one year on each, but any of the two priors arose from the same incident, thus the defendant could not be sentenced as a habitual offender.

¶38.    The defendant need only have two prior convictions at the time of his present trial; there is no requirement that the present offense have been committed after the prior conviction. *Crawley v. State*, 423 So. 2d 128, 128-29 (Miss. 1982). The defendant was presently charged with burglary. *Id.* at 128. He had two prior convictions of burglary. *Id.* at 129. The Court determined he was properly sentenced as a habitual offender because "[a]t the time he was sentenced in the case *sub judice*, he had been twice previously convicted of burglary and sentenced to terms of more than one year for each conviction." *Id.* Even though one of the priors occurred on the same day as the present charge, the two priors were separately brought and arose out of separate incidents which occurred at different times. *Id.*

¶39.    "It is clear the statutory phrase 'at different times' refers, albeit redundantly, to the incidents giving rise to the *previous* charges, and not to the date of conviction." *Rushing v.*

22

*State*, 461 So. 2d 710, 713 (Miss. 1984) (emphasis added). The defendant was presently charged with burglary and had two prior convictions of burglary. *Id.* Though the defendant was convicted on the same day for the two priors, they occurred on different days and were separate incidents, so his habitual-offender sentence for the present charge was proper. *Id.*

¶40.    Similarly, a defendant was previously convicted on two separate charges of uttering a forgery—she passed two separate checks on two separate consecutive days—but claimed they should have been considered the same incident for habitual-sentencing purposes. *McCullum v. State*, 487 So. 2d 1335, 1336 (Miss. 1986). The Court determined the defendant's prior felonies were separately brought charges, occurring at different times, and were separate incidents because they occurred a day apart, even if the checks were stolen from the same victim. *Id.* at 1339. In interpreting the statute, the court stated:

> The statute provides that one convicted of a felony may be sentenced as a recidivist upon proof that he or she has been "convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times."

*Id.* The Court's emphasis on the quoted language further emphasizes that the "separate incidents" language refers only to the priors and not to the present charge.

¶41.    A defendant presently charged with uttering a forgery had two prior convictions of burglary. *Burt v. State*, 493 So. 2d 1325, 1329 (Miss. 1986). He claimed his two prior burglaries—where he burgled two homes on the same day on the same mailing route—were not separate incidents. *Id.*    The prior burglaries were separately charged, happened at different times (the defendant could not have been at both homes at the same time), resulted in separate convictions and sentences, and involved two victims. *Id.* "It was not necessary

23

for the state to prove anything more." *Id.* Though both prior charges occurred on the same day, they arose out of separate incidents occurring at different times. *Id.* at 1330. Further, the court focused on there being *two* separate crimes in this case, not three. *Id.* at 1329. *See also Buckley v. State*, 511 So. 2d 1354, 1359 (Miss. 1987) (finding defendant's prior convictions of robbery and possession of stolen credit cards sufficiently separate, as they arose from incidents occurring two weeks apart, notwithstanding the defendant's testimony that the cards belonged to the person who was robbed). The Court once again emphasized, "Section 99-19-81 requires that, for enhancement of punishment, the *two prior felonies* must have arisen 'out of separate incidents at different times.'" *Id.* (emphasis added).

¶42.    In holding that concurrent sentences qualify as "separate terms," the Court found a defendant who had been sentenced to concurrent seven-year sentences for his three prior felonies qualified as a habitual offender for sentencing purposes. *Jackson v. State*, 518 So. 2d 1219, 1219-20 (Miss. 1988). Although two of the priors occurred on the same day, they all arose out of separate incidents, at different times, and were separately charged. *Id.* The statute "requires simply sentencing to separate terms, specifically omitting the requirement that they must be served separately, or that they must be served at all." *Id.* at 1220.

¶43.    Allen Nicolaou killed a fellow inmate while in prison for two counts of murder, one count of armed robbery, and two counts of kidnapping. *Nicolaou v. State*, 534 So. 2d 168, 169-70 (Miss. 1988). He argued all his priors were one continuous incident and that he should not be sentenced as a habitual offender. *Id.* at 173. "In order to impose a sentence under [Section 99-19-81], the proof must show the defendant had been *previously* convicted

24

twice for felonies 'upon charges separately brought and arising out of separate incidents at different times.'" ***Id.*** (emphasis added). The robbery and the kidnappings took place after, and were apart and separate from, the murders. ***Id.*** Nicolaou murdered two men, took one of their cars and robbed a convenience store, and then kidnapped two women. ***Id.*** Though all the crimes took place on the same day, they were separately charged felonies, occurred at different times and places, and "clearly were two separate 'incidents.'" ***Id.***

¶44.    The Court was then asked to re-examine ***Burt*** in determining how much time must elapse before two prior burglary convictions may qualify as "separate incidents" in order to sentence the defendant as a habitual offender for his present charge of another burglary. ***Pittman v. State***, 570 So. 2d 1205, 1205 (Miss. 1990). The Court determined his burglaries of two adjacent schools—sharing a common fence, walkway, cafeteria, and auditorium—on the same day were sufficiently separate incidents. ***Id.*** at 1207. Pittman had two prior convictions of burglary, which were separately brought felony charges, and they were separate incidents because they occurred at different times. ***Id.*** at 1206. "Separateness and difference in time seem central to our search for meaning. Place is important only in that one cannot be two places at once; it takes time to go from one place to another." ***Id.*** In interpreting the statute concerning the requirements of the prior convictions, the ***Pittman*** Court emphasized:

> All we are told is that the *prior offenses* must have arisen out of "separate incidents at different times," and we must take the legislative language as we have been given it, not as we wish it were. It is well to reflect that, subject only to constitutional limitations, the legislative branch of government holds the exclusive power to provide punishments for crimes.

*Id.* (emphasis added). ***Pittman***'s language quoted in the Majority Opinion, Part One, paragraph eleven, (that Riddle's prior offenses "arose out of a common temporal nucleus of operative fact and did not qualify as separate incidents at different times") applies only in a ***Riddle***-type situation, as thoroughly discussed in paragraph thirty-seven, *supra*.

¶45. The Court of Appeals then applied ***Pittman*** when it was asked to decide if prior convictions of aggravated assault and burglary that occurred within minutes of each other were sufficiently separate incidents to sentence the defendant as a habitual offender for his present robbery charge. ***Davis v. State***, So. 2d 176, 179 (Miss. Ct. App. 2003). Davis burgled a home and stole a gun. *Id.* A neighbor gave chase, and Davis fired the stolen gun into the air (aggravated assault). *Id.* Davis had completed the robbery—he was "out of the home" and "down the road"—when he committed the aggravated assault, and the owner of the home and the neighbor were completely different victims. *Id.* The court found the two priors sufficiently separate from each other because the "aggravated assault at some point later in time and location has nothing to do with the burglary of a dwelling" and upheld Davis's conviction as a habitual offender. *Id.*

¶46. This Court's most recent case interpreting Section 99-19-81 is ***Garrison v. State***, So. 2d 990 (Miss. 2006). Garrison was presently charged with failing to register as a sex-offender, and he had prior convictions of rape, two armed robberies, and forgery in both state and federal court. *Id.* at 992, 995. The Court held the requirements of the statute were met when the state proved Garrison had prior convictions in both state and federal court for uttering a forgery, that he had concurrent sentences imposed, and that he was incarcerated

26

in federal and state penitentiaries for more than one year. *Id.* at 995. "Further, the rape and robberies constituted separate felonies pursuant to [the habitual-offender statute], and Garrison served more than one year on each. There were two separate victims and two types of criminal intent were necessary to carry out these crimes." *Id.*

¶47.    More recently, the Court of Appeals decided a case on facts substantially similar to *Riddle*. A defendant was presently charged with manslaughter[15] and had two prior convictions—burglary and theft by taking. *Bergeron v. State*, 60 So. 3d 212, 213-14 (Miss. Ct. App. 2011). The prior convictions were brought in a single charge, and both crimes were committed on the same evening when the defendant broke into a car dealership, stole a set of car keys, and drove off with the corresponding vehicle. *Id.* at 214. In determining whether the two prior felonies satisfied the statutory requirements, the Court held they failed on two counts—the prior charges were brought as a single action, although the statute requires they be separately brought, and they arose out of the same incident rather than being separate incidents at different times. *Id.* at 216.

¶48.    Every case focuses on an analysis of the prior convictions. At the time of Drummer's present charge and conviction of grand larceny, he had two prior felony convictions: felony flight in 2009 and unlawful taking of a motor vehicle in 2005. No one suggests that these two convictions are related to each other, but analyzing them under the statutory requirements reveals they are not. They were separately brought felonies. They occurred at different times

[15]The defendant initially was charged with murder, but he was found guilty of the lesser-included offense of manslaughter. He was being sentenced (the "present charge") on the manslaughter conviction as a habitual offender. *Bergeron v. State*, 60 So. 3d 212, 213-14 (Miss. Ct. App. 2011).

and in different locations: the flight in Webster County and the felony taking in DeSoto County. They occurred prior to Drummer's felony conviction, and each resulted in a prison term of at least one year. As the **Burt** court found, "It was not necessary for the state to prove anything more." **Burt**, 493 So. 2d at 1329. Although the prior felony fleeing occurred on the same day as the present grand larceny, it was separately brought and arose out of a separate incident from the other prior conviction of felony taking. The requirements of the statute were met. Following the rules of statutory interpretation, Drummer's sentence as a habitual offender was proper.

¶49.    Thus, as Justice Coleman, I cannot join Part I of today's majority opinion. "This Court must be vigilant in its duty to strictly comply with the recidivism statutes enacted by the Legislature." **Garrison**, 950 So. 2d at 994. The plain language of Section 99-19-81 requires the trial court to impose the maximum sentence upon a finding that the defendant had twice previously been convicted of separate and distinct felonies for which he was separately sentenced to terms of one year or more. Finding the requirements of the statute met, the judge had no discretion. The trial court's sentence of Vance Drummer as a habitual offender, and the Court of Appeals' affirmance of that sentence should be affirmed.

**DICKINSON, P.J., PIERCE AND COLEMAN, JJ., JOIN THIS OPINION.**

**KITCHENS, JUSTICE, CONCURRING WITH PART I AND DISSENTING FROM PART II:**

¶50.    Because I believe that the flight instruction should be abolished, I respectfully dissent from the Randolph majority's conclusion that the flight instruction in this case was properly given to the jury.

¶51.    The philosophical justification for a flight instruction is a belief that fleeing from a

crime scene is proof of a guilty conscience. ***Pannell v. State***, 455 So. 2d 785, 789 (Miss.

1984) (Robertson, J., specially concurring). But, as the United States Supreme Court has

noted, there is a plethora of reasons an innocent person might flee the scene of a crime:

> [I]t is a matter of common knowledge that men who are entirely innocent do
> sometimes fly from the scene of a crime through fear of being apprehended as
> the guilty parties, or from an unwillingness to appear as witnesses. Nor is it
> true as an accepted axiom of criminal law that "the wicked flee when no man
> pursueth, but the righteous are bold as a lion." Innocent men sometimes
> hesitate to confront a jury, not necessarily because they fear the jury will not
> protect them, but because they do not wish their names to appear in connection
> with criminal acts, are humiliated at being obliged to incur the popular odium
> of an arrest and trial, or because they do not wish to be put to the annoyance
> or expense of defending themselves.

***Alberty v. United States***, 162 U.S. 499, 509,  16 S. Ct. 864, 40 L. Ed. 1051 (1896) (internal

citations omitted).

¶52.    Over time, this Court has narrowed the circumstances under which the State may be

given a flight instruction.   For more than two decades, we have held that prosecutors could

obtain a flight instruction only if " that flight is unexplained and somehow probative of guilt

or guilty knowledge." ***Reynolds v. State***, 658 So. 2d 852, 856 (Miss. 1995).  We held that

flight by the accused  must be "highly probative" of the facts of that particular case. ***Fuselier***

***v. State***, 702 So. 2d 388, 390 (Miss. 1997) (***Fueselier II***).

¶53.    But, even under these restrictions, the instruction has foundered.  This Court rarely

has held that a flight instruction properly was presented to the jury. *See* ***Fuselier v. State***,

468 So. 2d 45 (Miss. 1985) (***Fuselier I*** ) ("Here, because the court was aware of an

explanation for Fuselier's flight, which was at that time inadmissible, we are of the opinion

29

that the flight instruction should not have been granted."); *accord **Liggins v. State***, 726 So. 2d 180 (Miss. 1998) ("Evidence of flight is inadmissible where, as in this case, there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant."); **Banks v. State**, 631 So. 2d 748, 751 (Miss. 1994) ("The present case does not fall within either of the circumstances where a flight instruction would be appropriate or warranted."); **Pannell**, 455 So. 2d at 788 ("[T]here is absolutely no foundation in the record before us on which to base a flight instruction."); **Craft v. State**, 271 So. 2d 735 (Miss. 1973) (same); **Quarles v. State**, 199 So. 2d 58 (Miss. 1967) ("This instruction should not have been given. It is confusing in form [and] capable of misleading the jury . . . ."); **Eubanks v. State**, 227 Miss. 162, 85 So. 2d 805 (1956) ("The facts did not warrant the giving of this instruction. Appellant gave an entirely plausible and uncontradicted explanation of the reason why he was absent from the county for five weeks. The sheriff's testimony to the effect that he could not locate appellant does not negative [sic] the uncontradicted status of appellant's testimony in this respect. *Instructions on flight, if given at all, should be used only in cases wherein that circumstance has considerable probative value.* Moreover, such an instruction is primarily argumentative.") (emphasis added) (internal citations omitted). Often the best-case scenario in cases in which prosecutors request a flight instruction occurs when the evidence of guilt is so overwhelming that the State does not need the flight instruction to sustain a conviction. *See **States v. State***, 88 So. 3d 749, 759 (Miss. 2012). In other words, more often than not, flight instructions either insert undue prejudice into a trial or are cumulative. **Pannell**, 455 So. 2d at 789

(Robertson, J., specially concurring) ("A realistic assessment of flight evidence suggests that it will almost never be necessary to obtain a conviction of the guilty.").

¶54.    In *Ervin v. State*, 136 So. 3d 1053 (Miss. 2014), a majority of this Court cautioned against the continued use of flight instructions.  We held that granting a flight instruction was "dangerous." *Ervin*, 136 So. 3d at 1060 (quoting *Randolph v. State*, 852 So. 2d 547, 567 (Miss. 2002) (Carlson, J., specially concurring).  We further held that:

> [W]ith the prosecutors having been duly warned on multiple occasions about the danger of submitting flight instructions, there can be no legitimate hue and cry from the State in the future if this Court . . . reverses a criminal conviction based on the trial court's improper grant of a flight instruction, which had been improvidently submitted by the prosecutor.

 *Id.* (quoting *States*, 88 So. 3d at 759 (Carlson, P.J., specially concurring)).  Although the case was reversed on a ground other than the flight instruction, it is apparent that the *Ervin* case was tainted by yet another such instruction that contributed nothing to the fairness of the trial.

¶55.    Even when properly administered, many discerning judges of this Court have been malcontented with prosecutors' continued reliance on this instruction:

> While I agree with the majority that the giving of the "flight instruction" was proper, based on the facts and circumstances of this particular case, and the applicable case law, the use of the flight instruction in this state can be described in one word — "dangerous." In my years of experience as a trial judge, the flight instruction was very seldom requested by the prosecution and almost never given. It simply is not needed. While evidence of flight might be relevant, no legitimate purpose is served by the jury receiving an instruction from the trial court (which heightens the importance of the evidence in the eyes of the jury) highlighting for the jury the fact that the jury can consider evidence of flight as "a circumstance of guilt or guilty knowledge" when "that flight is unexplained and somehow probative of guilt or guilty knowledge." The term "unexplained flight" is somewhat nebulous, anyway, and a trial

31

> court, by giving a flight instruction, simply puts itself in a position of possibly placing reversible error in an otherwise clean record. If a trial court persists in giving a flight instruction, I suggest that it do so with great caution.

*Randolph*, 852 So. 2d at 567-68 (Carlson, J., specially concurring) (internal citations omitted); *accord States*, 88 So. 3d at 759 (Carlson, P.J., specially concurring) ("[P]rosecutors tread on thin ice each time they persist in submitting a flight instruction."); *Shumpert v. State*, 935 So. 2d 962, 973 (Miss. 2006) (Carlson, J., specially concurring) ("[T]he State is rolling the dice, as far as potential reversible error, each time it submits a proposed flight instruction to the trial judge for consideration."); *Pannell*, 455 So. 2d at 789 (Hawkins, J., specially concurring) ("[A] so-called 'flight' instruction, in every case I have read, amounts to a comment upon, and emphasis of one particular part of the evidence. We have always condemned any instructions which did this.").

¶56. But the greatest injustice rendered by the flight instruction is not the impact that it has on trials of the guilty but the fact that it can be used to impute guilt to the innocent. The United States Supreme Court in *Alberty* and this Court in *Howard v. State*, 182 Miss. 27, 181 So. 525 (1938), opined that there are many reasons for which an innocent person may flee the scene of a crime. In *Howard*, we averred that flight is a circumstance "consistent with innocence as well as guilt." *Id.* at 527. The fact that the innocent have just as much reason to leave the scene of a crime is an unsettling concern that has emerged time and time again throughout our jurisprudence. *See id.*; *Pannell*, 455 So. 2d at 789 (Robertson, J., specially concurring).

¶57.    The majority opinion on this issue, authored by Presiding Justice Randolph, does not assert that such instructions offer any redeeming benefit to our system of justice.  Anecdotal examples of justices of this Court having approved these instructions in the past, or that prosecutors have not abused these instructions in every case that heretofore has come before this Court do not convey intrinsic merit to prosecutors' continued reliance on flight instructions. Such instructions do not lighten a prosecutor's burden to prove, beyond a reasonable doubt, every material element of an offense. *Thompson v. Louisville*, 362 U.S. 199, 80 S. Ct. 624, 4 L. Ed. 2d 654 (1960).  In light of this unchanging burden, what added benefit do prosecutors receive from the ability to have jurors instructed that they may "infer guilt" from evidence of flight?  The majority fails to articulate any tangible benefit the justice system receives to offset the danger this instruction imposes upon the freedom of innocents wrongfully accused of crimes.

¶58.    Instead, without supporting authority, the Randolph majority avers that "[a] properly drafted flight instruction can serve to protect innocents from jurors who might assign disproportionate weight to flight evidence by instructing jurors that they must consider all other evidence and may not rely solely on flight evidence." (Maj. Part Two ¶ 28).  In effect, the Randolph majority argues that innocent criminal defendants derive benefit from the jury's being able to "infer guilt" from their flight. With utmost respect, this logic is far fetched and palpably speculative, and its only apparent virtue is to be found in its originality.

¶59.    Ultimately, flight instructions are antithetical to a trustworthy and efficient justice system. In the best light, the prosecutor's ability to obtain an instruction allowing for a jury

33

to "infer guilt" from a guilty criminal defendant's fleeing is cumulative to the State's obligation to prove every element of an indicted offense beyond a reasonable doubt. This is to say that prosecutors obtain no benefit from a properly given flight instruction. Yet some continue to request flight instructions in cases in which they are not supported by the evidence, resulting in endangerment of otherwise valid convictions. Thus, those prosecutors who persist in asking for flight instructions impose a huge burden on the judicial system in exchange for no reciprocal benefit whatsoever. Most offensively, flight instructions can be used to impute guilt on innocent defendants, a fact which is intolerable to prevailing concepts of fairness and justice. Accordingly, because I would abolish the flight instruction and hold that its use amounts to manifest error, I respectfully dissent from the Randolph majority's conclusion that the flight instruction in this case was appropriate.

**DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**

**COLEMAN, JUSTICE, CONCURRING WITH PART II AND DISSENTING FROM PART I:**

¶60. The Circuit Court of Lowndes County did not err in sentencing Drummer as a habitual offender pursuant to Mississippi Code Section 99-19-81. The Court has never before held, as we do today, that the primary conviction for which a defendant is being sentenced must arise from a felony separate from one of the predicate felonies. In doing so today, we are using our judicial power to amend the statute to add a requirement the Legislature did not include. Accordingly and with respect, I dissent from Part I of the majority opinion, authored by Justice Kitchens. I concur with Part II of the majority, finding no error in the giving of the flight instruction and authored by Presiding Justice Randolph.

34

¶61. Section 99-19-81 requires only that the two predicate felonies be separate. The statute contains no requirement that either predicate felony arise "out of separate incidents at different times" from the primary felony, and in so holding today the majority writes into the statute a requirement the Legislature did not. Although the majority accuses me of twisting the language of the statute and constraining the clear intent of the Legislature, the majority makes no response to my position based on the actual language of the statute. Rather than relying on or addressing the language of the statute, the majority turns to allegations about common practice in the profession and nonapplicable precedent, the latter of which I discuss below. No part of the statute needs to be twisted to point out the absence of any requirement that the primary and predicate convictions arise from "charges separately brought and arising out of separate incidents at different times[.]" Miss. Code Ann. § 99-19-81 (Rev. 2007). It is the majority, rather, who must take a pen to the statute and add the requirement to it.

¶62. Mississippi Code Section 99-19-81 provides as follows:

> Every person convicted in this state of a felony who shall have been convicted *twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times* and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Rev. 2007) (emphasis added). Accordingly, each sentence enhanced pursuant to Section 99-19-81 involves three felony convictions. First, there is the latest conviction, what I call the primary conviction, which is the conviction for which the sentence is being enhanced. In the instant case, the primary conviction is Drummer's

35

conviction for grand larceny. The other two convictions involved in every Section 99-19-81 conviction are what are commonly referred to as the predicate felonies, or the two convictions used as the basis under the statute for enhancing the sentence imparted for the primary conviction. In the instant case, the predicate convictions are the felony flight conviction from Webster County and a 2005 conviction in DeSoto County for Unlawful Taking of a Motor Vehicle. In the instant case, no party or member of the Court suggests the latter two are related.

¶63. The statute requires that the two previous convictions be for "any felony or federal crime upon charges separately brought and arising out of separate incidents at different times," but contains no requirement that each predicate felony be separate from the primary. The only statutory, relational requirement attaching to the primary and predicate convictions is that the predicate convictions occur "previously." Otherwise, each predicate felony may be "any felony or federal crime," as long as they are separate from one another.

¶64. In prior cases before the Court in which the "separate incidents" requirement has been at issue, the question presented has been whether the two predicate convictions arise from separate incidents, not whether one of the predicate convictions arises from a separate incident than the primary conviction. In *Pittman v. State*, 570 So. 2d 1205 (Miss. 1990), the defendant had been convicted of business burglary, and the Court considered whether two predicate convictions – one for burglary of the Carrie Dotson Elementary School in Grenada and the other for grand larceny committed the same day at the neighboring Willia Wilson

Elementary School in Grenada[16] – were convictions arising out of separate incidents at different times. *Id.* at 1205-1206.

¶65.    In *Riddle v. State*, 413 So. 2d 737 (Miss. 1982), the Circuit Court of Jackson County had convicted the defendant of the kidnapping and rape of a child and for burglary at night of the dwelling of his victim and sentenced him as a habitual offender. *Id.* at 738. The defendant was convicted of all three felonies and, although the opinion is somewhat vague, it appears that two of the three convictions were used to enhance the third. *Id.* at 738. The *Riddle* Court noted that the State conceded that the habitual offender statute had been improperly applied as "the only *previous* crimes shown to have been committed by Riddle were crimes which arose out of a single incident." *Id.* (emphasis added). Although the concession by the State limited the discussion in the opinion, it is obvious from the quoted language that the *Riddle* Court focused on whether the two previous, or predicate, convictions arose from a single incident.

¶66.    On October 27, 1984, Allen Nicolaou murdered a fellow inmate in the Hancock County Jail, and the Circuit Court of Hancock County convicted him as a habitual offender of capital murder in *Nicolaou v. State*, 534 So. 2d 168 (Miss. 1988). On October 22, 1984, he had pleaded guilty to two murders, armed robbery, and two kidnappings. *Id.* at 170. The State used the convictions resulting from his October 22, 1984, plea as the predicate convictions to enhance his sentence pursuant to Section 99-19-81. Again, the issue on appeal was whether the predicate convictions were sufficiently separate. *See also Burt v. State*, 493

_____

[16] The two schools were connected by a common walkway. *Pittman*, 570 So. 2d at 1206.

37

So. 2d 1325, 1329-1330 (Miss. 1986) (considering whether two convictions for burglaries that were committed on the same date qualified as predicate convictions for primary conviction of uttering a forgery); *McCullum v. State*, 487 So. 2d 1335, 1339 (Miss. 1986) (holding that two prior convictions for forgeries committed on consecutive days supported enhanced sentence for primary conviction for welfare fraud); *Rushing v. State*, 461 So. 2d 710, 713 (Miss. 1984) (holding that two burglaries committed seventeen days apart in Coahoma County were sufficiently separate to serve as predicate convictions to enhance a sentence for the primary conviction of a third burglary).

¶67.    Only one case I found, *Crawley v. State*, 423 So. 2d 128 (Miss. 1982), might be argued to have considered whether one of the predicate convictions was sufficiently separate from the primary conviction.  A Lowndes County jury convicted Rodney Crawley – as a habitual offender under Section 99-19-81 – of burglary.  On appeal, Crawley contended "that section 99-19-81 cannot be applied to enhance one's punishment on account of a former conviction unless the offense for which he is on trial was *committed* after the *conviction* of the prior offense." *Id.* at 128.  Thus, the only issue presented to the *Crawley* Court was one of timing – whether the crime leading to the primary conviction must occur after the crime underlying one of the predicate convictions.  The *Crawley* Court, relying on the language of Section 99-19-81, held that the statute contains no requirement that the felony undergirding the primary conviction take place after the predicate convictions are obtained. *Id.* at 129.  Although there was no issue of whether the primary and predicate convictions must be for factually separate felonies, the *Crawley* Court did write without any further analysis that the

38

predicate conviction "was separately brought and arose out of a separate incident which occurred at a different time of day" from the primary conviction. *Id.* However, because the language regarding the separate nature of the crimes had nothing to do with the limited timing issue raised, it is *dicta* and does not speak to the issue of what, if any, relationship is required between the crimes underlying the predicate and primary convictions.

¶68. In response to my opinion, the majority quotes ***Buckley v. State***, 511 So. 2d 1354 (Miss. 1987), wherein the Court indeed wrote, in reliance on the ***Crawley*** Court's *dicta*, "A prior offense may be considered under the statute even if [it] occurred on the same day as the instant offense as long as the two charges arose from 'separate incidents." ***Buckley***, 511 So. 2d at 1359. However, it is absolutely clear that the issue before the ***Buckley*** Court was whether the two *prior* convictions used to enhance Buckley's sentence arose from charges brought separately and arising "out of separate incidents at different times." ***Buckley***, 511 So. 2d at 1359. "The essence of [Buckley's] point is that two *prior* convictions in Memphis, Tennessee, arose out of the same incident." *Id.* (emphasis added).

¶69. As shown, not one of the above-discussed cases addressed whether – or contains a holding from the Mississippi Supreme Court that – the primary conviction must arise from a separate charge than either of the predicate convictions, and with all respect, the majority's assertion that "this Court long has held that the predicate felonies must be separate from each other *and* from the felony for which the defendant currently is being sentenced" is inaccurate.

¶70. As the ***Pittman*** Court bemoaned,

> Section 99-19-81's language implies a common sense premise, if only it had
> been tightly tailored to fit only that premise. . . . Three separate criminal acts

39

suggest a likely-to-be-repeated habit of behavior such that the community ought intervene. But before such behavior should be labeled habitual, it would seem that the events should be sufficiently separate that the offender's criminal passions may have cooled so that he has time to reflect, and if after such an interval the individual forms and actualizes a new criminal design, and then does so a third time, he should be met with all of the power of the public force.

*Pittman*, 570 So. 2d at 1206. It would make, perhaps, better sense for Section 99-19-81 to state that all three convictions, not just the predicate convictions, must arise from separate incidents, but it does not. As the *Pittman* Court went on to write,

[A]ll we are told is that the *prior offenses* must have arisen out of "separate incidents at different times," and we must take the legislative language as we have been given it, not as we wish it were. It is well to reflect that, subject only to constitutional limitations, the legislative branch of government holds the exclusive power to provide punishments for crimes.

*Id.* at 1207 (citing *Winters v. State*, 473 So. 2d 452, 456 (Miss. 1985); *Howell v. State*, 300 So. 2d 774, 780-81 (Miss. 1974)) (emphasis added).

¶71. Perhaps one could argue that the Legislature intended but overlooked requiring the same degree of separation for the primary and predicate felonies as required for the predicate felonies alone, but the Court should not shelter its decision to make judicial additions to a political statute by speculating that the language it would add was omitted by the Legislature due to oversight. "Unless it is unavoidable and clearly manifest, courts must not impute inadvertence to the Legislature, and especially in cases where such inadvertence would have to be inferred in the face of repeated enactments of the same statute." *Seward v. Dogan*, 198 Miss. 419, 436, 21 So. 2d 292, 294 (1945); *see also His Way Homes, Inc. v. Miss. Gaming Comm'n*, 733 So. 2d 764, 769 (¶ 20) (Miss. 1999) (holding that the Court will not add to the applicable statutes of the Charitable Bingo Law new provisions authorizing payments to

workers when such provisions could not be found in the plain language of the statutes); *City of Houston v. Tri-Lakes, Ltd.*, 681 So. 2d 104, 106 (Miss. 1996) ("In sum, this Court cannot omit or add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated. Thus, we are not justified in concluding that the legislature intended, but forgot, to include private parties in the list of those who may institute proceedings to enforce zoning ordinances."). Section 99-19-81 does not require that the primary and predicate convictions arise from "separate incidents at separate times." The Legislature enacted the statute in 1976. The Legislature addressed it and brought it forward when it enacted House Bill Number 585 in 2014. Miss. Laws ch. 457, § 79 (2014). Despite what can fairly be characterized as numerous changes to Mississippi's penal statutes contained in House Bill 585, the Legislature brought Section 99-19-81 forward without amendment. *See Seward*, 198 Miss. at 436, 21 So. 2d at 294 ("The repetition of the enactment of a statute is of itself evidence against inadvertence on the part of the Legislature[.]").

¶72. Whether it makes more sense or not for the majority to add to the statute a requirement omitted by the Legislature – that the primary and predicate convictions be for separate crimes – we stray beyond the borders of our constitutional authority in doing so.

¶73. Even if, as the majority assumes, the underlying conviction must be for a crime arising out of separate incidents at separate times than the primary conviction, I agree with the Court of Appeals' excellent analysis leading to the conclusion that Drummer's felony flight conviction is sufficiently separate from his grand larceny conviction for habitual offender

41

purposes. ***Drummer v. State***, No. 2012-KA-02004, 2014 WL 3409099, \*\*9-14 (¶¶ 35-53)

(Miss. Ct. App. July 14, 2014). The Court of Appeals was correct on several points,

including, *inter alia*, that, in reliance upon ***Garrison v. State***, 950 So. 2d 990, 995 (¶ 19)

(Miss. 2006), Drummer's two crimes had different victims and arose from distinct facts.

> As in ***Garrison*** and ***Davis*** [*v. State*, 850 So. 2d 176, 179-180 (¶¶ 13-15) (Miss.
> Ct. App. 2003)], the circuit court determined in the present case that
> Drummer's predicate offense of felony flight arose from a distinct set of facts
> from his earlier larceny offenses, thereby constituting a completely separate
> offense from the larceny offenses. Our review also reflects that, although
> Drummer's felony-flight and larceny offenses occurred on the same date, the
> offenses failed to arise from a common nucleus of operative fact. As reflected
> in the record, the crimes occurred at different times of day, occurred in
> different cities and counties, required different criminal intents, involved
> different victims, and required different elements of proof.
>
> Our review of the record first shows that Drummer's crimes occurred at
> different times of the day and in different cities and counties. As previously
> noted, Drummer's larceny offenses occurred in Columbus, located in Lowndes
> County, and his conduct constituting the offense of felony flight did not begin
> until he ran a four-way stop sign in Mathiston, located in Webster County.
> Moreover, Officer Anderson only began pursuing Drummer after Drummer ran
> the stop sign. Instead of stopping in response to Officer Anderson's police
> lights and siren, Drummer led Officer Anderson on a high-speed chase. He
> then continued to flee from Officer Anderson until reaching the police
> blockade at the county line of Leflore County, where he finally crashed into a
> light pole and tried to hide inside a shed.

***Drummer***, 2014 WL 3409099, at \*12 (¶¶ 45-46). The Court of Appeals also correctly held

that, for purposes of proving guilt, Drummer had completed committing the crime of larceny

before he committed the crime of felony fleeing.

> Applying our precedent, we find that the evidence in the record shows that
> Drummer completed the offense of grand larceny upon his taking of Agri-
> Turf's property with the specific intent to wholly and permanently deprive the
> company of its property. *See **Catling v. State***, 45 So. 3d 295, 298 (¶ 10) (Miss.
> Ct. App. 2010). Mississippi case law establishes that, to constitute the

42

asportation of someone else's property, the "carrying away" movement need not be substantial to be sufficient. *Mapp* [*v. State*], 248 Miss. [898, 904], 162 So. 2d [642, 645 (Miss. 1964)]. "To remove [the goods] with the requisite felonious intent from one part of the premises to another, or from the spot or house where they were found, or even from one place to another in the same room, is a sufficient asportation." *Id.* For example, in *Harbin* the supreme court found the evidence showing that the defendants hooked a chain to the victim's car and towed the vehicle a mere three feet before abandoning the attempt to be sufficient to support their grand-larceny conviction. *Harbin* [*v. State*], 402 So. 2d [360,] 361-62 [(Miss. 1981)].

As explained in *Harbin*:

> There is a caption when the defendant takes possession; he takes possession when he exercises dominion and control over the property. There is an asportation when he carries away the property; any carrying away movement, however slight, even though it takes but a moment, is sufficient. Given an asportation, a larceny is committed even if the defendant for whatever reason abandons the property, or even if, because he is detected, his purpose in carrying away the property is frustrated.

*Harbin*, 402 So. 2d at 361 (quoting 3 Wharton's Criminal Law, *Larceny* §378 (1990)).

In further applying our precedent to the present case, we find that a "caption" and "possession" occurred when Drummer exercised dominion and control over Agri-Turf's trailer and lawnmower. An "asportation" occurred upon any movement of the stolen property by Drummer. This element was satisfied upon even the slightest movement of the property by Drummer, and as the record reflects, Drummer not only removed the property from Agri-Turf's premises but also from Lowndes County completely. Thus, Drummer successfully completed all the requisite elements of his grand-larceny offense before engaging in the criminal conduct of felony flight later that day in another city and county.

Drummer's argument that his felony flight grew out of the asportation element of his larceny offenses overlooks the applicable case law establishing that even slight movement is sufficient for the completion of asportation. His argument also fails to acknowledge the continuing nature of a larceny offense even though commission of the crime is complete. "Our supreme court has long

held that 'larceny is a continuous offense and is being committed at all times during which the thief deprives the owner of the stolen property of its possession.'" *Walker v. State*, 96 So. 3d 43, 46 (¶ 12) (Miss. Ct. App. 2012) (citing *Walker v. State*, 188 Miss. 177, 183, 189 So. 804, 806 (1939)).

*Drummer*, 2014 WL 3409099, at **13-14 (¶¶ 49-52). Although Section 99-19-81 by its terms requires only the two predicate convictions to be for separate felonies and is silent as to any factual relationship between the predicate and primary convictions, if the Court chooses to write such a requirement into the statute, then, pursuant to the entirety of the Court of Appeals' discussion of the issue, which includes the above-quoted language, Drummer's crimes of felony fleeing and grand larceny were sufficiently separate.

¶74. The Court lacks the power under our constitutional framework to write into a statute language that the Legislature did not. *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶ 12) (Miss. 2013) (citing *Stockstill v. State*, 854 So. 2d 1017, 1022-23 (¶ 13) (Miss. 2003) ("It is not the duty of this Court to add language where we see fit.")). There being no requirement in Section 99-19-81 that the predicate convictions arise from "separate incidents at different times" than the primary conviction, I cannot join Part I of today's majority opinion. Even with today's addition to the statute, the Court of Appeals correctly held that the two felonies at issue were separate. Accordingly and with respect, I dissent from Part I of today's majority opinion. I concur with Part II.

**DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J., JOIN THIS OPINION.**

44